

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1809-10

### THE STATE OF TEXAS

### v.

### SOUTCHAY SANAVONGXAY, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. MEYERS, J., dissented.

## O P I N I O N

Appellee was charged with an aggravated robbery committed on December 8, 2008. Before the case was filed, prosecutors asked the Fort Worth Police Department to get a buccal sample from appellee so that the state could make a confirmatory match. A preliminary CODIS match from another source was received on January 28, 2009, and was posted on the Electronic Case Filing System (ECFS) on July 27, 2009. On April 15, 2009, a Tarrant County grand jury indicted appellee and, as an enhancement, alleged a prior conviction for felony theft in 1992.

Defense counsel filed a discovery motion, file-stamped on November 6, 2009, that "moves the [trial] Court to order the District Attorney to produce and permit counsel for the Defendant to inspect, copy, and/or photograph the following designated items: 1. The physical evidence . . ., which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody, or control of the state or any of its agencies." The motion certifies that it was served on the District Attorney on November 6, 2009,[1] and is accompanied by an order.[2] DNA is physical evidence, and although the order is unsigned, the District Attorney was on notice that appellee wished to have access to any such evidence that the state or any of its agencies possessed or controlled.[3] It is clear from the record that the District Attorney recognized this and, on December 17, 2009, sent to the defense notice of two DNA experts that she "knew were confirming the DNA hit and sent an e-mail to defense counsel on January 4, 2010, "regarding who [her] DNA witnesses would be . . .."

According to affidavits filed with this Court, one of the trial prosecutors made a number of attempts to persuade the police department to obtain the buccal swab, but the swab was not forthcoming until the prosecutor contacted the supervisor of the officer who was responsible for

---

[1] Additional discovery motions were filed on December 30, 2009.

[2] TEX. CODE CRIM. PROC. art. 3(g). On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

[3] The record does not reveal whether the defendant made "a timely request to the attorney representing the state for the notice," thus obligating the district attorney to respond.

obtaining the sample.[4]  The sample was not collected until December 2009, more than ten months after the preliminary CODIS match and more than four months after the preliminary CODIS report was posted on ECFS.  The confirming DNA report was not available until Tuesday, January 19, 2010, but was then "immediately" made available to defense counsel.  On Wednesday, January 20, defense counsel filed both a motion for a continuance in order to obtain an independent examination of the DNA data and a motion to suppress the DNA evidence because of its tardy disclosure.  Trial on this case was set for Monday, January 25, 2010.

The trial court held an *in camera* hearing on the defense motions on January 20.  There is no official record of that hearing, only the recollections of the parties.  Defense counsel recalls that, in the *in camera* hearing, the trial judge denied the defense motion for continuance because the state had waited until immediately before trial to disclose the DNA results.  The prosecutors recall that the trial judge said, "Motion for Continuance denied, the DNA evidence is excluded, let's go to trial.  Tell Fort Worth that I am tired of this."[5]

One prosecutor averred that the trial judge wrote "Denied 1-20-10 exclude DNA evidence" on the defense motion for a continuance and "Denied 1-20-10 exclude DNA" on the defense motion

---

[4] Trial was set for January 25, 2010.  In a hearing on January 25, 2010, one of the prosecutors produced documentation of her attempts to contact the detective to remind him to get a buccal swab from the defendant.  The case was first staffed in December of 2008.  According to her documentation, before the case was filed, the prosecutor asked the detective to get a buccal swab from appellee, but he did not do it.  The prosecutor again asked the detective to get a buccal swab when the preliminary CODIS hit was confirmed on January 29, 2009.  That CODIS hit was not posted to the ECFS until July 29.

The next follow-up by the prosecutor was a telephone call eight and a half months after the second request, on September 15, 2009.  There followed another call on October 28, an e-mail on November 10, and calls on November 17 and 20 and December 4.  The prosecutor called the detective again on December 8, and apparently still getting no response, called his sergeant the same day.  After that call, the detective obtained a buccal swab from appellee.  The CODIS confirmation was posted to the ECFS on January 19, 2010.

[5] Each prosecutor's affidavit contained identical language as to the trial judge's statement.  Each of the prosecutors stated that they attributed the trial judge's comment to a recently completed capital trial that had been continued for five weeks because of issues with getting DNA samples processed.

to suppress the DNA evidence. The other prosecutor averred that writing her ruling on the motion itself was a common practice of the trial judge. The first prosecutor stated that, when he checked the clerk's file after filing the state's notice of appeal, "Denied" had been scratched out on the motion to suppress. While that is true, he fails to point out that the complete notation on the motion to suppress is "Denied [unreadable] 1-20-10 exclude DNA evid. in error." The "Denied [unreadable]" portion is repeatedly struck through, making it difficult to decipher,[6] and parts of the "1-20-10 exclude DNA evid. in error" are struck through with three lines spread over the notation, although that notation remains easily readable. The corresponding notation on the motion for continuance is "Denied 1-20-10 exclude DNA evid." There is ample support in the record that the trial court orally denied appellee's motion for continuance, e.g., "The defendant's motion for continuance, I denied," and "The defense motion for continuance, I denied." The bone of contention here appears to be whether and what the trial court ruled as to the defense motion to suppress.

On January 22, the state filed a "request" for the trial court to "enter findings of fact and conclusions of law signifying the rationale of its order of exclusion." The trial court did not rule on that request, and three days later, on January 25, the state filed an interlocutory notice of appeal pursuant to Tex. Code Crim. Proc. art. 44.01(a)(5).

During a hearing on January 25, 2010, the trial court explained the notation on appellee's motion to suppress.

> THE COURT: State filed a request for findings of fact and conclusions of law based on my ruling on the motion for continuance. Defendant filed a motion for continuance . . . . I see that I wrote the ruling on the motion for continuance on the motion to suppress, which I should not have, which would be the reason for the

---

[6] Based on the affidavit of C. Page Simpson, one of the prosecutors, the unreadable portion may say "DNA out."

misunderstanding, right? . . . [L]et me tell you what I ruled and then if y'all want a continuance–not a continuance but some time to examine the law, I'll be happy to allow that.

. . .

So here is the thing: The defendant's motion for continuance, I denied. I marked out what I wrote on the motion to suppress–but not the exclude DNA evidence was [sic] because it was not timely provided, not because I was granting the motion to suppress, not because I think the police did anything wrong.

. . .

I don't remember, but I am concerned that we're at a point where this case is over a year old and–amazingly, five days, six days before trial the defense gets notice of a DNA CODIS match–CODIS confirmation posted to ECFS on January the 19th. Today is the trial date; and that's what I said would not be admissible, not because of any kind of police misconduct, not because I'm ruling on the motion to suppress, but I wrote on the motion for continuance DNA–exclude the DNA evidence because it was not timely filed.

. . .

And that's fine, knowing that we are not having a suppression hearing. I'm not making–in error I led you to believe that I was making a suppression ruling; I'm not. I'm making an admissibility ruling because of the lateness of the discovery, which I will allow you to brief if you choose to.

And my concerns are, you said there was a CODIS match that was posted on November 18th, 2009. This case has been pending since February the 20th of 2009, and the evidence exchange docket was in July. Motions docket was September the 18th, the status conference docket was November the 6th, and it was after the status conference that we get a CODIS confirmation. And the Court is of the opinion that that is an improperly late discovery; it's just wrong. . . . [B]ut at some point the defense is entitled to get ready for trial and to know what's ready.

. . .

We haven't heard evidence on the motion to suppress. What I ruled is the defense continuance is denied and the evidence was inadmissible because of discovery violations.

Now, if y'all need time to brief that issue, you've got it. I'll see you in an hour and a half. And I'm–let me say if you'll object, we'll be on the record whenever you want to. And I'm sorry that my ruling was unclear.

From the record, we conclude that the trial court orally ruled on the defense motion for a continuance and did not rule on the defense motion to suppress the DNA evidence, but, on its own motion, chose to "exclude" the evidence because of the state's tardy notice to the defense.[7]

---

[7] The defense motion specifically based its motion to suppress on the state's late disclosure of evidence.

Regardless of the term used, the DNA evidence became unavailable to the state. On January 29, four days after filing its notice of appeal, the state asked the trial court to enter a written order memorializing its ruling on the admissibility of the DNA evidence so that the state could appeal the unavailability of that evidence. No order was signed.

The court of appeals noted that, shortly after filing its notice of appeal, the state filed an original mandamus proceeding in the court of appeals "complaining about the trial court's refusal to enter a written order granting the motion." That writ application was denied in a summary opinion. The court of appeals summarized the trial court's oral ruling as "what I have ruled is the defense continuance was denied and the evidence was inadmissible because of discovery violations." Because the trial court's notations on the defense motions were not memorialized in a written order, the court of appeals dismissed the state's appeal for want of jurisdiction, citing Tex. R. App. P. 43.2(f) and its own precedents, *State v. Cox*, 235 S.W.3d 283 (Tex. App.—Fort Worth 2007, no pet.), and *State v. Kibler,* 874 S.W.2d 330 (Tex. App.—Fort Worth 1994, no pet.). *See State v. Sanavongxay*, 331 S.W.3d 788 (Tex. App.—Fort Worth 2010).

The state appealed the dismissal to this Court and raised four questions for review.

> 1. Did the Court of Appeals err in concluding that a trial court can effectively interfere with or deny the State's right to appeal as legislatively provided for under TEX. CODE CRIM. PROC. ANN. Art. 44.01(a)(5) (Vernon Supp. 2010), simply by refusing to sign a written order memorializing its ruling to exclude or suppress the State's evidence?

> 2. Should *State v. Rosenbaum*, 818 S.W.2d 398 (Tex. Crim. App. 1991) and all its progeny generated statewide be revised to cover situations where a trial court refuses to sign a written order excluding or suppressing evidence in order to interfere or deny the State the right to appeal under TEX. CODE CRIM. PROC. ANN. Art. 44.01(a)(5) (Vernon Supp. 2010)?

> 3. Where a trial court intentionally refuses to sign a written order to exclude

or suppress evidence, is the oral order sufficient to grant the Court of Appeals jurisdiction on a State's appeal made pursuant to TEX. CODE CRIM. PROC. ANN. Art. 44.01(a)(5) (Vernon Supp. 2010)?

4. Did the Court of Appeals err in inferring that a hearing was necessary at the State's behest notwithstanding [that] the appellate record[,] at the time notice of appeal was given pursuant to TEX. CODE CRIM. PROC. ANN. Art. 44.01(a)(5) (Vernon Supp. 2010)[,] was totally devoid of any evidence supporting the trial court's action in excluding or suppressing the State's DNA evidence?[8]

We conclude that the answer to each of the state's questions for review is "no."

In its first issue, the state complains that the court of appeals erred when it concluded that "a trial court can effectively interfere with or deny the State's right to appeal . . . simply by refusing to sign a written order memorializing its ruling to exclude or suppress the State's evidence." However, the opinion of the court of appeals does not address the issue whether a trial court, by refusing to enter a written order, can stymie the state's right to an interlocutory appeal; that discussion appears only in Chief Justice Livingston's concurrence, *State v. Sanavongxay*, 331 S.W.3d 788, 789 (Tex. App.—Fort Worth 2010) (Livingston, C.J., concurring), and we will not address it.

In its fourth issue, the state complains that the court of appeals erred "in inferring that a hearing was necessary at the state's behest" and alleges that the appellate record "was totally devoid of any evidence supporting the trial court's action in excluding or suppressing the State's DNA evidence." However, the opinion of the court of appeals does not address the issue of the necessity of a hearing; that discussion appears only in Justice Walker's concurrence, *State v. Sanavongxay*, 331 S.W.3d 788, 791 (Tex. App.—Fort Worth 2010) (Walker, J., concurring), and we will not address it.

---

[8] We note that the tone and language that the state uses in both its grounds for review and its appellate brief do not always reflect well upon the author or advance the state's legitimate concerns.

In its second issue, the state urges that we should "revise" *Rosenbaum* and its progeny to cover the circumstances that the state argues occurred in this case. However, *Rosenbaum* dealt with distinguishable facts. The trial judge quashed a portion of an indictment and signed a written order on June 28 that contained language that specified that the order was to be entered of record on July 2 and that it would become final in fifteen days, thus allowing the state to file an appeal on or before July 16. The state filed its appeal on July 16, but the court of appeals calculated the time for appeal from June 28, when the trial judge signed the order, and dismissed the appeal as untimely. This Court reversed, finding that, "under the peculiar facts" of the case, the state's filing was timely. That ruling was based on the existence of a written order, the absence of which is precisely the issue here. We overrule the state's second issue.

In its third issue, the state argues that an oral ruling should suffice to grant to the court of appeals jurisdiction on the state's appeal when, as here, the trial court made an oral ruling but has allegedly refused to enter a written order. The problem with oral rulings is that there may be, and often is, disagreement as to what was said and what the ruling was. That is not the case here only because, after the unrecorded and variously remembered proceedings in the trial judge's chambers, more discussion occurred on the record. The legislature has chosen to permit appeals by the state of "an order" that meets the statutory requirements. An oral ruling is not "an order" for the purposes of establishing the decision of the trial court, precisely because of the fallibility of human memory. Further, without "an order," we have no evidence of the required finality of a ruling; an oral ruling is subject to change after further discussion or presentation of contrary law or precedent. Only a writing suffices.

Pursuant to Tex. Code Crim. Proc. art. 44.01(a)(5), the state is entitled to appeal an order of

a court in a criminal case if the order grants a motion to suppress, if jeopardy has not attached in the case, and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence is of substantial importance in the case. TEX. CODE CRIM. PROC. art. 44.01(a)(5). The filing of a notice of appeal by a party invokes the jurisdiction of the appellate court over all parties to the trial court's judgment or order appealed from. TEX. R. APP. P. 25.1(b). As Chief Justice Livingston noted in her concurring opinion, if a trial court refuses to, or simply does not, enter a written order, the state's right to appeal a pretrial ruling could be stymied, but the statute states that the state may appeal "an order," and our precedent requires that an order be in writing.[9] *See, e.g., Rosenbaum*, 818 S.W.2d at 402 ("Taking into account both the terms

---

[9] The state argues that we should change the law to permit an appeal when a trial court makes an oral ruling, but refuses to issue a written ruling, which is a prerequisite to showing a final, appealable judgment necessary to the invocation of appellate court jurisdiction. But this change is not necessary; in such a situation, our current procedures allow a litigant to adequate remedy through a petition for a writ of mandamus.

Mandamus may be appropriate when a trial court refuses to rule. But requesting such a writ creates a burden that the movant must carry before the writ may issue. *See State ex rel. Young v. Sixth Judicial District Court of Appeals,* 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (relator is required to establish, among other things, that "what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision.").

First, the state did not show that the oral ruling was final, in that the judge said she would consider the matter after law was provided to her. *See Patterson v. Planned Parenthood of Houston & SE Tex.*, 971 S.W.2d 439, 442 (Tex. 1998) (explaining that action is not ripe for judicial review if it involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"). The record does not reflect that the state returned with either the law supporting its position or an explanation about why it did not tender the supporting law.

Second, Tex. R. App. P. 52.7(a)(1) requires relators to file, with a petition in an original proceeding in the court of appeals, "a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding." The state did not include an order with its request for findings of fact and conclusions of law, nor did it submit suggested findings and conclusions. The state did tender an order to the trial court that stated that she was excluding the DNA evidence ("Having considered the Defendant's motion for continuance, the Court denies said motion, but in the alternative, it is the order of the Court that the resulting [sic] of the DNA testing be excluded from use in the above numbered and styled cause."), but only on the same day on which it filed its notice of appeal. The order is not signed. During the January 25 pretrial hearing, the trial court spoke of having had five settings before trial. The "Record of Criminal Actions" records numerous filings by both sides and notes up to eight occasions on which a court hearing of some sort appears to have occurred–initial appearance; conditions of bond added; consultation; evidence exchange; motions; status conference; bond conditions amended; motions hearing on the record–but it does not note a hearing on the defense motion to suppress, the state's request for a written order on the exclusion of the DNA evidence, or the state's request for findings of fact and conclusions of law. According to the affidavit of assistant district attorney Bill Vassar, when he presented the request for findings and conclusions, the trial judge asked, "Why didn't we do this on the record, that's how it's supposed to work." Instead of scheduling a hearing, the state sought relief from the appellate court, which, in light of the state's failure to prove the finality of the rulings and to provide record evidence of a refusal by the trial court to rule, had no

'entered' and 'court' in the phrase 'entered by the court' in Art. 44.01(d), our reading of this phrase in the context of the statute as a whole leads to an interpretation that in this case the term 'entered by the court' encompasses the signing of an order by the trial judge."). An order cannot be signed unless it is written. In this case, there is no order from which to appeal, that is, no writing that memorializes the trial court's informal notations on the motion to suppress or the trial judge's oral explanation of her non-ruling.

We conclude that, because there is no written order from which to appeal, the court of appeals correctly held that it has no jurisdiction over the state's appeal, and we affirm the judgment of that court.

Delivered: January 25, 2012
Publish

---

authority to act.

Although properly declined on its merits, the state's mandamus was the proper avenue to address the situation described by the state. Had the state established that "what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision," the state would be entitled to a writ of mandamus to compel the trial court to reduce her oral ruling to writing because such a ruling is a ministerial act that is the proper subject of a mandamus. *See State ex rel. Young,* 236 S.W.3d at 210; *Patterson*, 971 S.W.2d 442. In this case, it was not the absence of a remedy, but the State's misapplication of the available remedy, that has resulted in its failure to obtain relief from the trial court's purported conduct.