

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0280-15

### THE STATE OF TEXAS

### v.

### JOHN ALLEN WACHTENDORF, JR., Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### WILLIAMSON COUNTY

YEARY, J., announced the judgment of the Court in an opinion in which MEYERS, JOHNSON, and RICHARDSON, JJ., joined. NEWELL, J., filed a concurring opinion. KELLER, P.J., filed a dissenting opinion in which KEASLER, HERVEY, and ALCALA, JJ., joined.

## O P I N I O N

The issue in this case is whether the time for filing a notice of appeal from an order adverse to the State should begin to run with the trial court's signing of that order if the State received no timely notice that the order had been signed. The State asserts that it was not notified that the trial court had signed an order granting Appellee's motion to suppress until

the period for filing its notice of appeal had expired. Having received no notice of this triggering event, the State filed an untimely notice of appeal, and the Third Court of Appeals dismissed its appeal for want of jurisdiction, in an unpublished memorandum opinion. *State v. Wachtendorf*, No. 03-14-00633-CR, 2015 WL 894731 (Tex. App.—Austin Feb. 26, 2015) (not designated for publication). We granted the State's petition for discretionary review in this case in order to address its argument that the timetable for its notice of appeal should not be triggered by an event for which it obtained no notice and had no actual knowledge. We shall affirm the judgment of the court of appeals.

## BACKGROUND

Appellee was charged with the felony offense of Driving While Intoxicated. According to the district clerk's file-mark, on January 16, 2014, Appellee filed a motion to suppress the results of a test for blood alcohol concentration following the extraction of blood at the time of his arrest.[1] At the conclusion of a hearing conducted on February 14, 2014, the trial court took the motion to suppress under advisement. On July 7, 2014, the hearing reconvened, and the trial court orally announced that it intended to grant Appellee's motion. The docket sheet reflects that the trial court actually signed an order to that effect on the same day. The State maintains, however, that the trial court did not sign the order in open court, and the Reporter's Record does not clearly indicate that it did. Rather, the Reporter's

---

[1] Appellee's motion to suppress included a proposed order for the trial court to sign. The trial court did not sign this originally proffered version of the order, which appears on page 29 of the Clerk's Record.

Record shows that, in response to the State's request for written findings of fact and conclusions of law,[2] the trial court directed Appellee to prepare proposed findings and conclusions and adjourned the hearing. Appellee did not immediately file the requested findings and conclusions.

Article 44.01(d) of the Texas Code of Criminal Procedure currently requires the State to file notice of appeal within twenty days after an appealable order "is entered by the court." TEX. CODE CRIM. PROC. art. 44.01(d). This Court has held that the triggering event to begin the running of the period within which the State must file its notice of appeal is when the trial judge *signs* the order. *State v. Rosenbaum*, 818 S.W.2d 398, 402 (Tex. Crim. App. 1991); *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex. Crim. App. 1992). Rather than file a notice of appeal within twenty days of the date the trial court signed the order granting the motion to suppress in this case, however, the State waited until August 19, 2014, well over twenty days after the date the order was signed. At that time the State filed, not a notice of appeal, but a motion asking the trial court to reconsider its ruling on Appellee's motion to suppress.[3]

The trial court entertained the State's motion to reconsider on September 25, 2014,

---

[2] *See State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) (at the request of the losing party in a motion to suppress, the trial court is required to enter express findings of fact and conclusions of law).

[3] *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (a ruling on a motion to suppress is interlocutory, and the trial court may reconsider its ruling at any time before the end of trial).

and heard additional evidence. At the conclusion of this hearing, the trial court announced that it was "inclined to just continue with [its] ruling[.]" The trial court then reminded Appellee that it had requested him to prepare proposed findings of fact and conclusions of law. Appellee responded that proposed findings and conclusions were no longer needed because the State had "waived" its right of appeal by failing to timely file its notice of appeal. The trial judge denied any memory of having signed the order granting the motion to suppress, but almost immediately thereafter he re-discovered the signed order—apparently in the clerk's file. The trial judge noted, however, that the signed order was "not file-marked." The prosecutor replied that "it's still not entered of record if it's not file-stamped."[4] The trial court asked the parties to supply case law regarding the State's ability to appeal under the circumstances, and Appellee directed the trial court's attention to *State v. Cowsert*, 207 S.W.3d 347, 351-52 (Tex. Crim. App. 2006), a case in which this Court held that a ruling

---

[4] The entire colloquy reads:

THE COURT: Well, I don't see an order signed, either, so unless you've got a copy of it -- and, again, I'm kind of –

[PROSECUTOR]: And I would object to anything that's not the original in the Court's file.

THE COURT: Okay. I lied. There it is. It's not file-marked.

[PROSECUTOR]: Then it's not -- then it's not entered of record.

THE COURT: Well, this is on the Motion to Suppress Blood Specimen heard on February 14th and signed July 7th, 2014.

[PROSECUTOR]: Then it's still not entered of record if it's not file-stamped.

on a motion to reconsider the granting of a motion to suppress is not *itself* an appealable order under Article 44.01(a)(5) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(5) (permitting the State to appeal an order that grants a motion to suppress). The trial court reset the case for a future "status hearing" and adjourned without ruling on the State's motion to reconsider. At some point—the record does not clearly indicate how or on whose impetus—the signed order granting the motion to suppress was stamped as "FILED" in the district clerk's office with a filing date of September 25, 2014.[5]

The State eventually filed its notice of appeal on September 30, 2014, five days after the date on which the trial court's order granting the motion to suppress was ultimately file-marked. On November 6, 2014, the trial court conducted the promised status hearing. In the interim, Appellee had filed a motion in the court of appeals to dismiss the State's purported appeal for lack of jurisdiction. The State complained that it had not been privy to the trial court's July 7th signing of the order granting the motion to suppress. Because the trial court's oral representation on July 7th that it intended to grant the motion was not an appealable order, the State maintained, it could not have known or been expected to file a notice of appeal within twenty days of that date. The State argued that "the question now becomes whether or not the Court's signing of the order versus the entering of it by the district clerk

---

[5] An identical copy of the proposed order that was attached to Appellee's motion to suppress appears on page 43 of the Clerk's Record. On this copy, however, the word "GRANTED" is circled, the word "DENIED" is scratched out, and a handwritten notation indicates that it was "[s]igned the 7th day of July, 2014." The judge's signature appears on the signature line. It is file-stamped at 3:15 p.m. on September 25, 2014, however—the same date as the hearing on the State's motion for reconsideration, which had commenced at 1:55 p.m.

is the date of -- the effective date." The trial court observed that "you two can fight out that in the Court of Appeals, right?" The parties agreed, and, with that, the trial court adjourned the status hearing, again without having ultimately ruled on the State's motion to reconsider.

The court of appeals dismissed the appeal for want of jurisdiction on the strength of *Rosenbaum* and *Bage*, observing that, "[d]espite the criticisms expressed [by the State] against the holding in *Rosenbaum*, the [Court of Criminal Appeals] has recently sanctioned that holding again." *State v. Wachtendorf*, 2015 WL 894731, at *2 (citing *State v. Sanavongxay*, 407 S.W.3d 252, 258-59 (Tex. Crim. App. 2012)). In its petition for discretionary review, the State renews its criticism of our holdings in *Rosenbaum* and *Bage*, arguing that they are unjust to the State, at least in cases in which it has received no notice of the signing of an order granting a motion to suppress. The State complains that "[e]xisting precedent, as currently interpreted by, at least, the Third Court of Appeals, allows a [trial] court to sign an order [granting a motion to suppress], wait twenty[-]one or more days before filing the order with the district or county clerk or otherwise giving the State notice of the existence of said order, and thereby effectively strip altogether from the State its ability to appeal." State's Brief at 13. We granted the State's petition to address this complaint.

## ANALYSIS

### The Statute, the Rule, and the Case Law

The State has not always enjoyed a right to appeal in Texas, and that right is "a statutorily created one." *State v. Sellers*, 790 S.W.2d 316 (Tex. Crim. App. 1990). Article

44.01 of the Code of Criminal Procedure currently permits the State to appeal, among other things, "an order of a court in a criminal case if the order . . . grants a motion to suppress evidence[.]" TEX. CODE CRIM. PROC. art. 44.01(a)(5). But the State "may not make an appeal" under Article 44.01 "later than the 20th day after the date on which the order . . . to be appealed is entered by the court." TEX. CODE CRIM. PROC. art. 44.01(d).

This Court was first called upon to construe what "entered by the court" meant for purposes of Article 44.01(d), in 1991. *Rosenbaum*, 818 S.W.2d at 402. There we noted that then-Rule 41(b)(1) of the Texas Rules of Appellate Procedure (since re-codified as Rule 26.2(b)) generally provided that an appeal was perfected with respect to an appealable order when notice of appeal is filed within fifteen days (now twenty) from "the day [the] appealable order is *signed* by the trial judge[.]" *Id*. at 400 (emphasis added). We recognized that "this Court has long held that the signing of a[n] . . . order is a function of the court separate and distinct from the entry of said . . . order into the records of the court." *Id*. at 401. "Entry into the records of the court is merely ministerial in nature." *Id*. "As a practical matter," we observed in *Rosenbaum*, "a judge may never really know when a signed order . . . is physically entered into the record. There are no consistent deadlines for clerical entry into the record in the courts throughout Texas." *Id*. at 402. In order to avoid the anomaly of tying the inception of the period for filing a notice of appeal to such an indefinite date, we chose to construe the phrase "entered by the court" in Article 44.01(d) to mean the same as the general provision for perfecting an appeal in former Rule 41(b)(1), holding that "the term

'entered by the court' encompasses the signing of an order by the trial judge." *Id*.[6]

"Establishing a definite starting date for calculating appellate timetables[,]" we concluded,

"serves the interests of all parties." *Id*. And we held that the "definite starting date" should

be the date the appealable order was signed. *Id*. We cemented this holding less than a year

later in a mandamus proceeding, in *State ex rel. Sutton v. Bage*, 822 S.W.2d at 57.

Both Presiding Judge McCormick and Judge Baird took issue with the Court's

construction of Article 44.01(d) in these cases. *Rosenbaum*, 818 S.W.2d at 403-05 (Baird,

J., joined by McCormick, P.J., concurring); *Bage*, 822 S.W.2d at 57 (McCormick, P.J.,

dissenting); *id*. at 58 (Baird, J., dissenting). They argued that the phrase "entered by the

court" in Article 44.01(d) is a legal term of art that typically refers, not to the signing of an

appealable order, but "to the ministerial act of the clerk spreading the court's [order] in the

minutes of the court." *Bage*, 822 S.W.2d at 59 (Baird, J., dissenting) (citing *Wilson v. State*,

677 S.W.2d 518, 522 (Tex. Crim. App. 1984), which in turn cited *Moore v. State*, 245

---

[6] When the Texas Rules of Appellate Procedure were redrafted, effective in 1997, former Rule 41(b)(1) was rewritten. Ironically, under current Rule 26.2(b), now specifically governing the State's perfection of appeal, a State's notice of appeal from an appealable order must be filed within a certain period of time "after the day the trial court enters the order . . . to be appealed." TEX. R. APP. P. 26.2(b). Thus, the actual language of Article 44.01(d) ("entered by the court") now corresponds to the actual language in Rule 26.2(b) ("the trial court enters the order"), and *neither* provision speaks explicitly in terms of when the trial court *signs* the order. Still, the commentary following Rule 26 makes clear that the 1997 revision was not meant to be substantive. *See id*., Notes and Comments, at 221 (Vernon's 2003); *see also*, 60 TEX. B.J. 900 (1997) ("Nonsubstantive changes are made in the rule for criminal cases."). We must presume that the construction that we gave to the phrase "entered by the court" in *Rosenbaum* has been carried over into Rule 26.2(b)—namely, that a trial judge "enters" an appealable order under Article 44.01 on the date that he *signs* it.

S.W.2d 491(Tex. Crim. App. 1952)).[7] Moreover, they argued, to the extent that the provision in former Rule 41(b)(1) generally fixes the commencement of the time for filing any notice of appeal to the date an appealable order is signed, Article 44.01(d) should trump it, for two reasons. First, whenever a statute and a rule irreconcilably conflict, the statute—the legislative act—always controls. Second, specific provisions govern over general. Because Article 44.01(d) specifically fixes the beginning of the time for the State to file a notice of appeal from an adverse appealable order under Article 44.01(a), it is more specific than the general, and inferior (because court-made), provision in Rule 41(b)(1). *Bage*, 822 S.W.2d at 59 (Baird, J., dissenting).

But the majority's holding that the notice-of-appeal period begins with the trial court's signing of the appealable order carried the day, and it has been ingrained in the law now for twenty-five years. This is not to say, of course, that starting the period for filing a State's notice of appeal on the date the appealable order is signed (rather than the date when the clerk enters it into the record) is not without its own potential for indefiniteness. *Bage* itself illustrates as much. In *Bage*, as in the instant case, the State did not even learn that the trial court had signed an appealable order granting a motion to quash the indictment until the then fifteen-day period for filing its notice of appeal under Article 44.01(d) had already expired. 822 S.W.2d at 58 (McCormick, P.J., dissenting). This Court nevertheless chose to adhere to

---

[7] "In a criminal proceeding, a clerk of the district . . . court shall . . . receive and file all papers . . . and . . . perform all other duties imposed on the clerk by law." TEX. CODE CRIM. PROC. art. 2.21(a)(1) & (6). "The clerk of a district court shall . . . record the acts and proceedings of the court[.]" TEX. GOV'T CODE § 51.303(b)(1).

*Rosenbaum*'s construction of the phrase "entered by the court" in Article 44.01(d), and refused to mandamus the district clerk to accept the State's untimely notice of appeal, reasoning that the clerk had "no ministerial duty to file the State's appeal." *Id*. at 57. On the strength of the holdings in *Rosenbaum* and *Bage*, and because "[a] timely notice of appeal is necessary to invoke a court of appeals' jurisdiction[,]" *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996), the court of appeals in this case regretfully dismissed the State's appeal. *Wachtendorf*, 2015 WL 894731, at *2.

### The State's Complaint

The State does not now reiterate the argument it made at the September 25th hearing on its motion for reconsideration; it does not urge us to revisit the phrase "entered by the court" under Article 44.01(d), and ask us to re-construe it to mean the date the appealable order was *file-stamped*. Nor does the State ask us to embrace the view of Presiding Judge McCormick and Judge Baird, that "entered" means spread on the minutes of the court—and for good reason. As the facts of this very case demonstrate, a district clerk's file mark will not always constitute definitive evidence of when a document was actually "filed," much less spread on the minutes of the court.

"In a long line of cases," the Texas Supreme Court has held that a document is "filed," not when it is file-stamped, but "when it is tendered to the clerk, or otherwise put under the custody or control of the clerk." *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1994).[8]

---

[8] *See Williams v. State*, 767 S.W.2d 868, 871 (Tex. App.—Dallas 1989, pet. ref'd) ("In civil cases, an instrument is generally deemed filed when it is left with the clerk regardless of whether a

Here, the unsigned order (as it was attached to Appellee's motion to suppress) was originally "filed"—that is, tendered to the district clerk—at least as of January 16, 2014, when the motion to suppress itself was file-stamped. But, though this proposed order was in the district clerk's file, no such order was signed until July 7, 2014. The signed copy of the order was apparently tendered to the district clerk at some point between July 7th, when the docket sheet indicates it was signed, and September 25th, when the trial court discovered it, signed and dated but not file-stamped, in the district clerk's file. But (as anticipated in *Rosenbaum*), the record does not reveal a particular date between July 7th and September 25th when the district clerk actually acquired custody or control of the signed order, much less when the signed order might have been entered of record. That is to say, we cannot know when the district clerk performed its ministerial function of spreading the trial court's signed order in the minutes of the court. It therefore does not behoove the State to urge us to proceed upon Presiding Judge McCormick's and Judge Baird's construction of "entered by the court." The record in this case simply does not reveal a date certain upon which it may be said that the district clerk entered the court's order in the minutes of the court. In fact, the only date-

file mark is placed on the instrument. [citation omitted.] We see no reason why the same rule should not apply in criminal cases, and we hold that it does."); *Perkins v. State*, 7 S.W.3d 683, 686 (Tex. App.—Texarkana 1999, pet. ref'd) ("An information is filed when it is delivered to or left with the clerk, despite the absence of a file stamp on the document."); *In re Smith*, 270 S.W.3d 783, 786 (Tex. App.—Waco 2008, no pet. h.) (a document is "generally considered to have been 'filed'" when tendered to the clerk, whether or not it is file-marked).

certain in the present case is the date the order was signed.[9]

The fact of the matter is that, in any given case, there will be a potential notice problem for the State regardless of whether the date for beginning the period for filing its notice of appeal is the date that the order was signed or the date that it was spread on the minutes of the court. Whichever of these events is deemed to trigger the appellate timetable, the State may not become actually aware of that event before the time has run out to file its notice of appeal. Accordingly, the State does not now vigorously argue that *Rosenbaum* and *Bage* should be overruled; it simply argues that these precedents should not be slavishly followed in any case in which it has not received notice, or otherwise acquired knowledge, that an appealable order granting a motion to suppress has in fact been signed. It urges us to begin its notice-of-appeal timetable on September 25th—not necessarily because that was the date the trial court's order was eventually file-stamped, but because the State lacked any actual awareness of the existence of the signed order sooner than the trial court's discovery of it in the district clerk's file on that date. The State argues that, absent notice or actual

---

[9] The only *other* date certain in this case is the date the signed order was ultimately filed-stamped, on September 25th. But that was obviously not the date on which the signed order was tendered to the district clerk, and thus "filed," much less when it may have been spread on the minutes of the court. To treat September 25th as the operative date to begin the notice-of-appeal timetable would be tantamount to allowing the State to appeal, not the granting of the motion to suppress, but the refusal of the trial court to rule in the State's favor on its motion for reconsideration of the granting of Appellee's motion to suppress, which was the motion that was actually heard on September 25th. But, as Appellee pointed out to the trial court, we have unanimously held that any ruling on such a State's motion for reconsideration does not constitute an appealable order under Article 44.01. *State v. Cowsert*, 207 S.W.3d 347, 351 (Tex. Crim. App. 2006). If, by file-stamping the order on September 25th, the trial court meant it to count as an order overruling the State's motion to reconsider, that order was simply not appealable under *Cowsert*.

knowledge of the signed order, it would simply be unfair to hold the State to the date the order was signed.

**Judicially Required Notice**

In essence, what the State would have us do is to adopt a rule—as a matter of decisional law—similar to Rule 306a of the Texas Rules of Civil Procedure. Like Article 44.01 of the Code of Criminal Procedure and Rule 26.2(b) of the Rules of Appellate Procedure, Rule 306a provides that the timetables for various procedural requirements begins on "[t]he date [the] order is signed as shown of record[.]" TEX. R. CIV. PROC. 306a(1). But unlike Article 44.01 or Rule 26.2(b), Rule 306a provides that, when an appealable order is signed, the court's clerk "shall immediately give notice to the parties . . . that the . . . order was signed." *Id*. (3). If a party can prove to the trial court that it failed to receive such notice or acquire actual notice within twenty days of the signed order, then the beginning of the procedural timetables is postponed until the date of notice or actual knowledge, "whichever occurred first[.]" *Id*. (4) & (5); *John v. Marshall Health Services, Inc.*, 58 S.W.3d 738, 740-41 (Tex. 2001). The State urges us to adopt a similar rule that would delay the inception of the period within which its notice of appeal is due until such time as it becomes aware that the order granting the motion to suppress has been signed.

Rule 306a is more or less an omnibus provision, intended to apply equally to all parties and to numerous procedural timetables in civil practice. Here, the State would have us carve out a unique rule that applies to only one party (the State) and to one particular

procedural timetable (interlocutory notice of appeal). We are hesitant to fashion such a specific procedural rule by judicial fiat and out of whole cloth. We recognize that the Texas Supreme Court has cautioned the lower appellate courts "to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Verburgt v. Dorner*, 959 S.W.2d 615, 616-17 (Tex. 1997). But the Supreme Court has reciprocally recognized that this Court's "approach to the perfection of appeals in criminal cases has differed significantly from [its own] more liberal approach." *Id*. at 616 (citing *Olivo v. State*, 918 S.W.2d 519 (Tex. Crim. App. 1996)—the very case that the court of appeals relied upon in this case to dismiss the State's appeal). We shall not import into Article 44.01(d) and Rule 26.2(b) an elaborate notice requirement that the Legislature itself did not see fit to impose. We think that the State's suggestion that we append a notice provision not currently in either provision is more appropriately addressed to this Court's Rules Committee, as an exercise of our limited but legislatively endowed rulemaking authority—perhaps to revise current Rule 26.2(b) to add such a notice requirement. *See* Acts 1985, 69th Leg., ch. 685, § 1, p. 2472, eff. June 1, 1985 (granting this Court "rulemaking power to promulgate rules of posttrial, appellate, and review procedure in criminal cases except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant"); TEX. GOV'T CODE § 22.108(a) (same).[10] We certainly

---

[10] "Inherent in the [C]ourt of [C]riminal [A]ppeals's final appellate jurisdiction . . . is the authority to adopt or make [as a matter of decisional law] procedural requirements for the trial, appeal, and review of criminal cases. These rules must not conflict with any statutory or constitutional provisions, and they must be 'reasonable.'" George E. Dix & John M. Schmolesky,

cannot fault the court of appeals for declining to manufacture such a notice rule, *sua sponte*, simply to avoid the jurisdictional ramifications of the State's tardy notice of appeal in this case.

In any event, the State was not entirely powerless to preserve its interests in this case. There are actions it could have taken to ensure a timely notice of appeal. First of all, it is uncontested that the signed order was placed in the clerk's record at *some* point between July 7th and September 25th. From that (albeit undisclosed) point on, the State was placed on constructive notice that the order granting Appellee's motion to suppress had been signed.[11] At the conclusion of the hearing on July 7th, the trial court plainly announced its intention

---

40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 1:3, at 5 (3rd ed. 2011). For example, *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006), *see* note 2, *ante*, "probably reflects [this Court's] exercise of an inherent power to make procedural rules by decisional law." Dix & Schmolesky at 6. Nevertheless, since the Legislature conferred rulemaking authority on the Court in 1985, that "rulemaking power may require the [C]ourt of [C]riminal [A]ppeals to make some changes in the law by exercising that [rulemaking] authority rather than construing [as a matter of decisional law] a rule as adopted." *Id*. § 1:10, at 13. And "substantive changes in court rules should arguably be made by exercise of the [C]ourt's authority to amend or modify its rules rather than by judicial construction. Such modification often affects the interests of persons not parties to particular litigation. The rule-amending process provides those parties a fairer opportunity for input." *Id*. § 2:35, at 76. Moreover, "[r]ulemaking authority is almost certainly granted [by the Legislature] to the courts with the understanding it—rather than judicial construction—will be used for general modification of rules once promulgated." *Id*. at 77. We will not "construe" either Article 44.01 or Rule 26.2(b) to contain an elaborate notice requirement that finds no source whatsoever, explicit or implicit, in the actual language of either provision.

[11] "A person has notice of a fact . . . if that person [among other things] is considered as having been able to ascertain it by checking an official filing or recording." *Black's Law Dictionary* 1227 (10th ed. 2014). Indeed, the State seems to concede that filing of the signed order would suffice to provide adequate notice when it complained that a trial court could thwart its right to appeal by waiting more than twenty days to file its signed order or "*otherwise* giv[e] the State notice of the existence of said order[.]" State's Brief at 15 (emphasis added).

to grant the motion, and the State could have exercised diligence to monitor the district clerk's record for the filing of a signed order from that point forward. Instead, the State filed its motion for reconsideration of Appellee's motion to suppress without (by its own implicit admission) first checking the district clerk's record for a signed order. Indeed, for all that the appellate record suggests, the State was simply unaware of the holdings of *Rosenbaum* and *Bage*,[12] which plainly and consistently identify the signing of the order as the event that commences the timetable for filing its notice of appeal.

What is more, the State could have been far more proactive in protecting its right to appeal in this case. In addition to monitoring the district clerk's record, the State could have filed its notice of appeal at any time after the trial court announced its intention to grant the motion to suppress—or even after the trial court first took the motion under advisement on February 14th, signaling that it was taking the motion seriously. It is true, of course, that the trial court's oral pronouncements on the record do not constitute appealable orders. *State v. Sanavongxay*, 407 S.W.3d at 258. And, in any event, the State was apparently waiting for Appellee to provide the proposed findings of fact and conclusions of law that the trial court had requested on July 7th. Had the State filed its notice of appeal before the order was signed, it would certainly have been deemed premature. But the Rules of Appellate Procedure do not prohibit the filing of a premature notice of appeal; in fact, they expressly

---

[12] As we have already observed, *see* text at page 5-6, *ante*, as late as the hearing on November 6th, the State argued that "the question now becomes whether or not the Court's signing of the order versus the entering of it by the district clerk is the date of -- the effective date."

recognize the premature filing of a notice of appeal, specifically making it "effective and deemed filed on the same day, but after . . . the appealable order [was] signed by the trial court." TEX. R. APP. P. 27.1(b). The State exercised no such diligence in this case.[13]

## CONCLUSION

For the reasons given, we cannot conclude that the court of appeals erred to follow our precedents and dismiss the State's appeal for lack of jurisdiction. We affirm its judgment.

DELIVERED:        November 18, 2015
PUBLISH

---

[13] The State complains that an unscrupulous trial court could insulate its ruling from appellate review and altogether rob the State of its right to interlocutory appeal of a motion to suppress by deliberately signing an order granting the motion and then withholding the order from the district clerk for twenty days. There is no suggestion of such conduct in this case. And even if we shared the State's point of view, we would observe that it is wholly within the State's ability to obviate such machinations by filing a premature notice of appeal as we have suggested in the text.