

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00148-CR

THE STATE OF TEXAS, APPELLANT

V.

MATTHEW JANSSEN, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2016-410,627, Honorable William R. Eichman II, Presiding

December 12, 2019

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This is an appeal by the State from an order granting and denying, in part, a motion to suppress evidence filed by Matthew Janssen. The evidence in question involved controlled substances and drug paraphernalia. Janssen moved to suppress it because of purported violations of his constitutional rights against unreasonable searches and seizures. We reverse in part.

The appellate record reveals multiple searches and seizures in dispute. They were 1) a search following Janssen's arrest of the vehicle operated by Janssen, 2) the detention

and search of Juan Levario and his vehicle as he was found leaving Apartment #3011, and 3) the search of Apartment #3011 via a warrant. Janssen sought to attack each through a single motion to suppress, but, with the approval of the litigants, the trial court considered them in segments over a period of time. So too did it appear to rule on different aspects of the motion at different times and issued two sets of findings of fact and conclusions of law explaining its rulings. Ultimately though, it ordered that "[t]he evidence obtained as a result of [Janssen's] . . . vehicle search and the search of Apartment #3011 should be suppressed" while that "obtained as a result of the detention and search of Juan Levario's person and vehicle" should not. The State avers multiple issues for our review. We consider only those necessary to the disposition of the appeal and over which we have jurisdiction. Furthermore, we do not necessarily consider them in the sequence presented within the State's appellate brief.

*Issue Two – Search of Vehicle*

Janssen was arrested in a local bar on Broadway Avenue after selling controlled substances to a confidential informant. Upon his arrest, the officers found a key fob on him. They went outside and depressed the fob multiple times. Eventually, a Hyundai automobile across the street from the bar emitted a signal. That resulted in the officers approaching the Hyundai and searching it. In doing so, they found a utility bill addressed to the aforementioned Apartment #3011.

Janssen questioned the lawfulness of this vehicle search through a two-fold attack. First, he argued that using the fob to find the car was an improper search and then that searching the car itself was improper. The trial court agreed and issued signed findings of fact and conclusions of law memorializing its decision on May 14, 2018. The reasons

2

for deciding as it did were mentioned in that document, which document concluded with the statement: "All evidence found as a result of the search of the vehicle is tainted, and is, therefore, suppressed." The initial question before us is whether we have jurisdiction to entertain this issue.

The State's ability to appeal in a criminal case is statutorily created. *State v. Sellers*, 790 S.W.2d 316, 316 (Tex. Crim. App. 1990) (en banc). Thus, the terms of the statute must be followed. The statute in question here is article 44.01(a)(5) of the Texas Code of Criminal Procedure, and it permits an interlocutory appeal from "an order of a court . . . if the order . . . grants a motion to suppress evidence." TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West 2018). The State's effort, however, "may not [occur] . . . later than the 20th day after the date on which the order, ruling, or sentence to be appealed is entered by the court." *Id.* art. 44.01(d); *see* TEX. R. APP. P. 26.2(b) (reiterating the content of article 44.01(d)). Furthermore, the order is entered by the court, for purposes of 44.01(d), when signed by the trial judge. *State v. Rosenbaum,* 818 S.W.2d 398, 402–03 (Tex. Crim. App. 1991) (en banc). And, since "[a]n order cannot be signed unless it is written," *State v. Sanavongxay*, 407 S.W.3d 252, 258–59 (Tex. Crim. App. 2012), the order or ruling must be in writing. *Id; State v. Ortiz*, No. 07-10-0233-CR, 2010 Tex. App. LEXIS 9796, at *2 (Tex. App.—Amarillo Dec. 10, 2010, no pet.) (per curiam) (mem. op., not designated for publication) (holding that the appeal must be from a written order signed by the trial judge).

Here, the State attempted to perfect its appeal by filing a notice on April 29, 2019. Within that notice, it referred to the order from which it was appealing. That order was signed on April 10, 2019. It encompassed the entirety of Janssen's motion to suppress.

3

That is, the legality of the various searches undertaken by the police were considered in separate hearings apparently by agreement of the parties. The trial court first addressed the search of the blue Hyundai, held an evidentiary hearing, and ultimately issued its May 14, 2018 findings and conclusions of law. The remaining searches were the topic of a hearing held in November 2018. The court made various oral rulings at the end of the hearing and ultimately issued the April 10, 2019 written order.

Within the April 10th writing, the court reiterated its earlier ruling regarding the search of the blue Hyundai and ruled on the matters discussed at the November 2018 gathering. So too did it issue an additional set of findings and conclusions of law encompassing the issues heard at the November hearing. Those findings and conclusions also were signed on April 10, 2019.

Again, the question before us is whether the State's effort to appeal the blue Hyundai ruling was timely. It appeared within findings and conclusions signed in May 2018, and ending with the announcement that the evidence obtained "is tainted, and is, therefore, suppressed." Our answer to the question depends on whether the May 2018 findings and conclusions constituted a written ruling or order signed by the court.

No doubt, an order or ruling may come in many forms. Because of that, courts periodically have dealt with whether something said by the judge in a writing truly is an order or ruling. Various indicia were developed to help determine that. They include whether the writing 1) identifies the parties, 2) contains the cause number, 3) is signed and dated by the court, 4) illustrates a decision actually rendered, 5) describes that decision with certainty as to its effect on the parties, and 6) is publicly revealed through it being filed of record. *See, e.g.*, *Schaeffer Homes, Inc. v. Esterak*, 792 S.W.2d 567, 569

4

(Tex. App.—El Paso 1990, no writ) (per curiam) (holding that the court's letter was an order since it was dated, signed, identified the parties and cause number, illustrated a decision "actually rendered," described the decision with "certainty as to parties and effect," and was filed of record); *accord In re Newby*, 266 S.W.3d 557, 558 (Tex. App.—Amarillo 2008, orig. proceeding) (per curiam) (holding that the letter was an order because it "require[d] no further action memorializing [the] rulings," "contain[ed] the name and cause number of the case, the court's diction is affirmative rather than anticipatory of rulings on relator's motions, . . . bears a date, . . . was signed by the court, and was filed with the district clerk"). Also influential is whether the writing contemplates the need for future action by the court. *See Ortiz*, 2010 Tex. App. LEXIS 9796, at *2–3 (stating that the phrase "should be granted" in the court's fact findings and legal conclusions expressed a future intention to grant the motion to suppress); *State v. Sorrell*, No. 05-01-00658-CR, 2001 Tex. App. LEXIS 8380, at *2 (Tex. App.—Dallas Dec. 19, 2001, no pet.) (holding that the statement in findings that "the seized marijuana must be suppressed" was "nothing more than the judge's expression of the proper action *to be taken* in light of the fact findings").

Here, the final statement made in the May 2018 fact findings and legal conclusions differed from that in *Ortiz* and *Sorrell*. Instead of "should be granted" or "must be suppressed," the court said the evidence "is tainted, and is, therefore, suppressed." Unlike "should be" or "must be," we have "is . . . suppressed." The latter denotes present action to suppress the evidence now. It is definitive, clear, and understandable. Furthermore, the litigants and court so interpreted the directive at the November hearing. For instance, the State said: "But we figured that we could start today by putting on

5

testimony of kind of our theory of the case of why we believe our case can still move forward regardless of **your prior ruling**." (Emphasis added). The trial court also stated "I know that previously, **I had suppressed** the search of the vehicle that was impounded . . . from the area around the Local Bar" and "**I found** that it was an illegal search." (Emphasis added). Indeed, in its April 2019 findings and conclusions, the trial court also expressed that "[t]he evidence obtained pursuant to the first search (the vehicle search) **was suppressed** following a suppression hearing on October 31, 2017 (with findings of fact and conclusions of law **in support of the decision** being issued on May 14, 2018)." (Emphasis added). Simply put, the verbiage utilized by the trial court contemplated no need for future action to suppress the evidence in question; it was suppressed as of May 14, 2018.

The written May 2018 findings and conclusions also named the parties, identified the cause number, and contained both the judge's signature and date on which he signed the document. They were also filed of record on May 14, 2018, per the district clerk's filemark appearing on the document.

Given all the foregoing indicia, we conclude that the May 14, 2018 fact findings and legal conclusions met the criteria for being a written order or ruling for purposes of article 44.01(a) and (d). Thus, the State was obligated to perfect its appeal within twenty days of May 14th. It did not; so, we lack jurisdiction to consider its complaint regarding the search of the Hyundai and suppression of evidence found during it.

*Issue Three – Standing*

In its third issue, the State attacks the trial court's conclusion that Janssen "had standing to challenge the detention of Juan Levario and search of his vehicle." This search occurred after Janssen's arrest and at a different location. And, while the trial court found that Janssen did have standing to attack the search, it nevertheless ruled the intrusion to be lawful for reasons with which the State disagreed. In short, we are being asked to review a decision that denies an aspect of Janssen's motion to suppress, and therein lies the problem.

Again, statute permits the State to appeal a suppression order "if the order . . . grants a motion to suppress evidence." TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). The portion of the order in dispute through Issue Three did not grant Janssen's motion to suppress evidence. Thus, it fell outside the scope of article 44.01(a)(5), and we lack jurisdiction to entertain it. As said in *State v. Howard*, 908 S.W.2d 602, 604 (Tex. App.—Amarillo 1995, no pet.), "[o]nly those rulings which suppress evidence because of the purportedly unlawful means by which it was obtained fall within the umbrella of article 44.01(a)(5)."[1]

*Issue One – Search of Apartment #3011*

The final issue we address is that wherein the State contends the trial court erred in finding unlawful the search of Apartment #3011. The search was undertaken pursuant to a warrant. In finding it unlawful, the trial court stated within its conclusions of law as follows:

---

[1] This also relieves us from having to consider the State's concerns, if any, about the accuracy of the grounds upon which the trial court denied suppression. Again, the evidence was not suppressed; so, the trial court's decision cannot be reviewed under article 44.01(a)(5) of the Code of Criminal Procedure.

Under the totality of the circumstances test, the magistrate did not have a substantial basis for determining that contraband or evidence of a crime would be found at 701 North Ithaca Avenue, Apartment #3011. The information obtained from the confidential informants and surveillance conducted from the Spring to Fall of 2016 was stale by the time the supporting affidavit was drafted and therefore cannot be used to support the issuance of a search warrant. Furthermore, the remaining information contained in the search warrant did not establish a fair probability that contraband or evidence of a crime would be found at Apartment #3011.

According to the State, "most of the information in the supporting affidavit was [not] stale because the affidavit described activity of a protracted and continuous nature, i.e., drug dealing." It also "justified a conclusion that cocaine and items consistent with trafficking of controlled substances was probably on the premises at the time of the search." We sustain the issue.

An affidavit for a search warrant is sufficient to establish probable cause if, from the totality of the circumstances reflected in it, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). In other words, did it provide the magistrate with sufficient basis to conclude that there existed a fair probability that evidence of a crime would be found at the place to be searched? This requires use to view what the magistrate was told within the four corners of the affidavit, and our review is limited to those four corners. *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017). And, if the data within those four corners suffices to establish the requisite fair probability, that is enough, for the test is not proof beyond a reasonable doubt or even by a preponderance of the evidence. *Serrano v. State*, 123 S.W.3d 53, 59–60 (Tex. App.—Austin 2003, pet. ref'd); *Davis v. State*, 27 S.W.3d 664, 667 (Tex. App.—Waco 2000, pet. ref'd).

8

Of course, whether the data is stale influences the existence of probable cause. *See Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011). And, we assess the matter of staleness by considering four factors. They are 1) the nature of the crime involved; 2) the type of suspect involved and whether he is a "'nomadic' traveler, 'entrenched' resident, or established ongoing businessman"; 3) the nature of the item to be seized and whether it be "'perishable and easily transferred' . . . or of 'enduring utility to its holder'"; and 4) the place to be searched and whether it is "a 'mere criminal forum of convenience or secure operational base.'" *Id.* at 708 (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)). Finally, we note that time is a less important consideration when the observations recited within the affidavit depict "ongoing or continuing drug activity at a suspect's residence." *Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012).

The affidavit at bar described a series of controlled buys over the course of several months beginning in the Spring of 2016. The first occurred on March 16, 2016, and involved an unidentified Hispanic male selling cocaine through an intermediary to a confidential informant who had met with the police beforehand. The second occurred on April 7, 2016, and also involved a Hispanic male selling the substance to a confidential informant through an intermediary. Janssen was identified as the Hispanic male. Furthermore, he was followed by police upon completion of the sale. While conducting that surveillance, they saw him exchange vehicles at one location, drive to Apartment #3011, and enter it without knocking.

The next sale occurred on June 16, 2016 and involved a confidential informant calling Janssen and arranging to buy cocaine from him. The informant met with a third-

party (Jose Suarez) at the designated location and received the controlled substance. A fourth transaction occurred on June 23, 2016, and again involved a confidential informant contacting Janssen with Suarez completing the transaction at the selected location.

Another sale was arranged for June 30, 2016, and as before, the informant contacted Janssen who agreed to sell the substance. This time, though, the officers had Apartment #3011 and Janssen under surveillance. They watched him leave the abode, enter his vehicle, and engage in "counter-surveillance driving maneuvers." Eventually, Janssen contacted the informant by phone and denied having "knowledge of the agreement."

The last sale discussed in the affidavit was that occurring on October 7, 2016, and at which Janssen was arrested. As previously mentioned, it too involved an informant contacting Janssen and being told of a particular location at which to meet. Rather than Suarez arriving, though, Janssen appeared to complete the sale.

The affiant also described various events transpiring between the April and May 2016 transactions. The first consisted of police undertaking surveillance of Janssen and Apartment #3011. Over the course of a month, Janssen was seen "com[ing] and go[ing] freely from the apartment" at various times of day. So too was a particular Cadillac he drove seen parked there throughout the night. Second, a different informant told officers that he was able to buy cocaine from "'Chris'" and Suarez. The informant also told the affiant that he had been to a "stash house belonging to 'Chris' where he observed large quantities of cocaine and numerous firearms." Janssen was later identified as "Chris," according to the affiant.

10

Again, we peruse the affidavit as a whole to determine if it supplies the requisite fair probability. Segmenting events or facts and considering their significance as segmented deviates from this mandate. For instance, viewing alone the drug transactions which happened in March, April, May, and June makes it easier to deem them stale *viz-a-viz* the issuance of a warrant about three months later. But that is not what must be done, we look at the whole as a whole. Doing so reveals that the magistrate had before it evidence of a sequence of events culminating in Janssen's October arrest. Those events depicted Janssen engaging in a series of drug deals from March through the first week of October and utilizing others to assist him. That provided the magistrate basis to reasonably infer that Janssen was engaged in an ongoing drug business. His returning to Apartment #3011 after the initial transactions and he and his Cadillac being seen there regularly also allowed the magistrate to rationally infer that Janssen resided in the apartment.

To the foregoing we add 1) information from a confidential source about Janssen having a "stash house" containing drugs and weapons, 2) an officer witnessing Levario hurriedly leave Janssen's apartment shortly after the arrest on October 7th, 3) Levario carrying a shoe box as he hurried away, and 4) drugs being found in that shoe box. Those indicia provided basis for the magistrate to conclude that there was a fair probability that the apartment was more than a place of convenience for Janssen but rather the "stash house" seen by one informant and from which he operated his ongoing business. And, it is a small step to infer that a "stash house" has "stash" when an officer discovered "stash" being removed from it shortly before securing a search warrant.

11

Simply put, the first drug sale in March provided the initial piece of foundation. Over the ensuing months additional pieces were laid to form the foundation underlying request for and issuance of the search warrant hours after Janssen's arrest. And, in so viewing the events expressed in the affidavit sequentially, the magistrate and this Court can see how the information therein was not stale. To reiterate, evidence of ongoing criminal activity generally defeats a claim of staleness. *Jones*, 364 S.W.3d at 861 (quoting *United States v. Greene*, 250 F.3d 471 (6th Cir. 2001)).

Having sustained the State's first issue, we reverse that portion of the trial court's suppression order suppressing evidence obtained from the search of Apartment #3011. We affirm the remainder of the order and remand the cause to the trial court.


Brian Quinn
Chief Justice