

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-24-00159-CR

---

The State of Texas, Appellant

v.

Rafael Angel Gonzalez Fernandez, Appellee

---

On Appeal from the County Court at Law No. 7
El Paso County, Texas
Trial Court No. 20240C03755

---

## OPINION

The State appeals the county court's order dismissing an indictment charging the appellee,

Rafael Angel Gonzalez Fernandez, with the misdemeanor offense of participating in a riot.[1] In its

---

[1] Although no other case has been consolidated with this appeal, the caption of each party's brief lists both the information for this appeal and the names, trial court cause numbers, and appellate court cause numbers for 58 additional appeals, each of which involves a different appellee. Additionally, the parties assert in their briefing that the grand jury returned indictments on May 21, 2024, against each of the 59 appellees identified in the captions of their briefs, charging each defendant with the misdemeanor offense of riot participation, and both the State and Gonzalez Fernandez treat the 59 cases, in their respective briefing, as if they were part of a single, consolidated case or proceeding. Regardless of the parties' briefing, however, we note at the onset of this opinion that the record of this case contains no evidence establishing that the 59 referenced cases were consolidated in the court below, that no party sought consolidation of the appeals themselves, and that the cases have not been consolidated for purposes of appeal. As a result, we consider each of the 59 cases individually, and we will only consider the appellate record filed in each case individually in our determination of the issues presented.

dismissal order, the county court found that a district court order that purported to transfer cases from the district court to the county court failed to transfer any cases to the county court and that, as a result, its jurisdiction was not properly invoked. On appeal, the State contends that this case was properly transferred from a district court to the county court when the county clerk's office received an indictment against Gonzalez Fernandez, the district court's transfer order, and a list identifying the cases to be transferred, which included Gonzalez Fernandez's, each of which is included in the clerk's record in this appeal; that, even if the transfer process was defective, any defect constituted a procedural error, not a jurisdictional deficiency; and that the county court abused its discretion by dismissing the case. Gonzalez Fernandez, by contrast, argues that the State failed to establish that the county court erred by dismissing the case; Gonzalez Fernandez also alleges that the State caused the county court's file to be improperly altered, thereby resulting in the filing of an incorrect clerk's record, and requests, in two motions filed in this Court, sanctions against the State based on its conduct in this Court and in the county court.

For the reasons described below, we conclude this indicted misdemeanor case was *not* properly transferred from a district court to the county court, the county court's jurisdiction was not properly invoked, and the county court properly dismissed the case. We further conclude that Gonzalez Fernandez has failed to establish his entitlement to sanctions against the State and individual prosecutors. We affirm the county court's dismissal order, and we deny the motion for sanctions.

## I. PROCEEDINGS IN THE TRIAL COURT

### A. The indictment

On May 21, 2024, a grand jury empaneled by an El Paso County district court returned an indictment[2] charging Gonzalez Fernandez with having committed the Class B misdemeanor offense of participating in a riot.[3] The charging instrument signed by the grand jury foreperson stated in pertinent part:

> Grand Jurors for the County of El Paso, State of Texas, duly organized as such, at the January Term, A.D., 2024, of the 120th Judicial District Court for said County, upon their oaths in said Court, present that on or about the 12th day of April, 2024, and anterior to the presentment of this indictment, in the County of El Paso and State of Texas . . . Gonzalez Fernandez [committed the offense of participating in a riot].

At the top of the indictment, a handwritten notation shows the case was assigned county court cause number 20240C03755 and was assigned to County Court at Law No. 7. At the bottom of the indictment, a deputy county clerk indicated that the indictment was filed in the county clerk's office on May 23, 2024, and certified, on behalf of the county clerk, that the indictment "is a true

---

[2] The face of the indictment indicates that it is a "RE-INDICTMENT." In addition, one of the assistant district attorneys in this case testified, at an abatement hearing held during the course of this appeal, that the indictment in this case was a re-indictment, as the case had been previously indicted in April 2024. The record, however, does not include a copy of any prior indictment or charging document in this case, and, although we may abate the case for the purpose of having the trial court resolve a dispute over the accuracy or completeness of the record, we may not abate the case to create new evidence for use in determining the merits of an appeal and may therefore only consider the evidence from the abatement hearing for the purpose of determining the accuracy of the appellate record in this case. *See* Tex. R. App. P. 34.5(c)(1), 34.6(e)(3); *Amador v. State*, 221 S.W.3d 666, 676–77 (Tex. Crim. App. 2007); *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) ("While [the applicable rule of appellate procedure] permits supplementation of an appellate record with material that has been omitted from the appellate record, the rule cannot be used to create a new appellate record."). We will therefore refer to the indictment as an indictment rather than a re-indictment.

[3] *See* Tex. Penal Code Ann. § 42.02(b), (e). We note that the indictment did not allege the level of offense. But the Penal Code provides that: "Except as provided in Subsection (f), an offense under this section is a Class B misdemeanor." *Id.* § 42.02(e). Subsection (f) provides that: "An offense under this section is an offense of the same classification as any offense of a higher grade committed by anyone engaged in the riot if the offense was: (1) in the furtherance of the purpose of the assembly; or (2) an offense which should have been anticipated as a result of the assembly." *Id.* § 42.02(f). Here, the indictment did not allege the commission of any other offense by anyone engaged in the riot; the offense as alleged in the indictment is therefore a Class B misdemeanor. *Id.* § 42.02(e).

and correct copy of the original Indictment on file in [the County Clerk's] office." No district clerk file stamp, district court cause number, or other indication that the indictment was filed in the district court or with the district court clerk appears on the document.

## B. The district court's certification and transfer order

On May 21, 2024, a district court judge signed an order labeled "ORDER OF CERTIFICATION AND TRANSFER," with the heading: "FROM THE GRAND JURY FOR THE 120TH JUDICIAL DISTRICT COURT EL PASO COUNTY, TEXAS[.]" The order bears the caption: "IN THE MATTER OF CHARGES OF MISDEMEANOR OFFENSES BY GRAND JURY INDICTMENT" but does not identify any of the indicted defendants or cause numbers. In the order, the district court stated, "The Grand Jury inquired into misdemeanor level offenses and returned indictments relating to those misdemeanor cases listed in the Charging Instrument Report consisting of 8 pages attached hereto as Exhibit A, dated May 21, 2024 and incorporated by reference as if fully set forth herein."[4] In the order, the district court also "certifie[d] to the County Courts that said indictments were returned into the District Court" and ordered the indictments "transferred to the County Courts of El Paso County having jurisdiction."

The order was file-stamped on May 21, 2024, by both the district clerk and the county clerk, though only the county clerk's file-stamp is signed.

## C. The county court's dismissal order

On June 9, 2024, the county court signed an "ORDER DISMISSING INDICTMENT." In the order, the court stated that it held a hearing on June 6, 2024, to consider its jurisdiction over the case; that it took judicial notice of the matters contained in the court's file at the hearing; that the

_____

[4] The parties dispute whether the exhibit referenced in the transfer order was filed with the county clerk, which is an issue we address *infra*, § III. C(1).

court's file at the time of the hearing contained a one-page order purporting to transfer cases, identified in an attached document, from the district court to the county court; that no document was attached to the transfer order; and that the order therefore did not transfer any cases to the county court.[5] The court further stated that the transfer order's failure to actually transfer any cases to the county court was discussed at the hearing but, to its knowledge, the State had not made any attempt to remedy the issue. The court then dismissed the case against Gonzalez Fernandez.[6]

---

[5] The appellate record of this case contains neither a transcript from a June 6, 2024 hearing nor any evidence that such a hearing took place. Nevertheless, under the presumption of regularity, we must presume, unless the evidence shows otherwise, that the statements in the trial court's order are correct. *See Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) (en banc) (citing *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975)); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (en banc) (opinion on State's motion for rehearing). Thus, because the record contains no evidence contradicting the statements in the county court's dismissal order, we must presume that a hearing took place on June 6, 2024, and that the county court took judicial notice of the matters contained in the court's file at the hearing.

Further, both the State and Gonzalez Fernandez have affirmatively represented, in this appeal, that such a hearing took place. Specifically, the State contended, in its original brief, that the trial court held a hearing on the "Defense's Plea to the Jurisdiction" on June 6, 2024, and that the hearing "pertained to the 59 reindicted cases[,]" which included the indictment against Gonzalez Fernandez at issue in this case. Similarly, Gonzalez Fernandez's counsel asserted, in a brief filed in this case and in 58 other cases and on behalf of each of the 59 appellees in the cases in which counsel filed the brief, that "[o]n Thursday, June 6, 2024, the trial court heard Appellees' pleas to the jurisdiction, challenging the county court's jurisdiction to hear the matters based on an inadequate transfer process." Finally, the county court stated, at the abatement hearing, that the parties and the court "had a plea to the jurisdiction hearing on these cases which was held on June 6th of 2024[,]" and no party objected to or attempted to contradict the court's statement. Accordingly, under the presumption of regularity and in light of the parties' arguments on appeal, we will presume that the statements in the county court's dismissal order are correct. *See Light*, 15 S.W.3d at 107 (citing *McCloud*, 527 S.W.2d at 887); *Breazeale*, 683 S.W.2d at 450.

[6] The county court's dismissal order stated:

This cause is before the Court to determine whether it has jurisdiction over misdemeanor indictments returned by the 120th District Court Grand Jury on May 21, 2024. A "Plea to the Jurisdiction" hearing was held on June 6, 2024. Although not all the cases were called on June 6, 2024, the facts pertaining to all the misdemeanor indictments returned by the 120th District Court Grand Jury on May 21, 2024, are identical. Therefore, if the Court finds that it does not have jurisdiction in one case, it does not have jurisdiction in any of the misdemeanor cases indicted by the 120th District Court Grand Jury on May 21, 2024.

At the hearing held on June 6, 2024, the Court took judicial notice of the matters contained in the court file. Each of the files on the defendants indicted on May 21, 2024, contained a one-page document titled "Order of Certification and Transfer[."] This document purported to transfer cases listed on an attached document from the 120th District Court to the County Courts. However, no document was attached. Consequently, the Order did not transfer any case from the 120th District Court to the County Courts. Although the State was made aware of this at the hearing on June 6, 2024, it did not provide any explanation. At the conclusion of the hearing, the matter was taken under advisement. As of the signing of this Order, on the eve of trial, the State has not filed any document explaining the deficiency and it has not moved to amend or correct the Order. The State

5

The State appealed from the order on June 28, 2024.

## II. PROCEEDINGS ON APPEAL

### A. The clerk's record as filed

On July 30, 2024, a deputy county clerk filed a certified copy of the clerk's record with this Court. *See* Tex. R. App. P. 34.5, 35.2(a), 35.3(a). The record, as filed, contains a copy of Gonzalez Fernandez's indictment and the district court's "ORDER OF CERTIFICATION AND TRANSFER," followed immediately by an eight-page document with the heading "120TH GRAND JURY RE-INDICTMENT," with a notation in the upper-left corner of each page of the document, indicating that it is a "TRUE BILL LIST" from "May 21, 2024."

The true-bill list contains a typed list of 59 cases, identified by the county court cause number assigned to each case, the defendants' names and dates of birth, and the offense charged against each defendant. In addition, there is a second, handwritten county court cause number to the right of each defendant's case.[7]

A case reflecting Gonzalez Fernandez as the defendant is included among the cases listed in the true-bill list. The listed case against Gonzalez Fernandez is identified by a typed county court cause number—20240C02949—that is different from the county court cause number in this case. The second, handwritten cause number to the right of the case is identical to the county court cause number assigned to the indictment in this case, however.

---

has been given ample time to address the matter and it has not done so. Under these circumstances, the Court is unable to find that its jurisdiction has been properly invoked.

It is therefore ORDERED that this cause is DISMISSED.

[7] As will be discussed in more detail below, *infra* § II.C(1), the county clerk's office received the transfer order, the true-bill list, and a stack of 59 indictments all at the same time. As a result, the deputy county clerks used the true-bill list to keep track of the 59 indictments as they opened a new case based on each indictment, and they added the handwritten cause numbers to the true-bill list each time they opened a new case.

### B. The clerk's record dispute

On October 18, 2024, the State timely filed its initial brief.[8] In its brief, the State asserted that the trial court's finding that there was no document attached to the one-page transfer order was incorrect, because the "one-page Order in the Clerk's Record . . . is, in fact, followed by an 8-page document listing" the cases to be transferred. The State further argued that there was no indication "that anything in the Clerk's Record[] . . . is not accurate." The State therefore contended that "the trial court erred in its determination that it was without jurisdiction over" the case.

One week later, on October 25, 2024, Gonzalez Fernandez moved to abate the appeal. In the motion, Gonzalez Fernandez contended the clerk's record was inaccurate because it contained an "Order of Certification and Transfer" that had been "substantively changed . . . by the addition of eight pages behind the one-page [order]." Gonzalez Fernandez asserted that following the hearing held on June 6, 2024, and unbeknownst to the county court or defense counsel, an assistant district attorney contacted a supervisor of the county court clerk's office claiming, "the County Clerk's office had improperly filed [the order of certification and transfer] in each of the 59 cases." Gonzalez Fernandez alleged that an assistant district attorney had informed a deputy in the county clerk's office that the true-bill list should have been filed as an attachment to the transfer order and that the clerks "ha[d] an obligation to correct the . . . court files by attaching the true bill list to the" transfer order. Gonzalez Fernandez contended that the clerk's office subsequently filed the true-bill list in Gonzalez Fernandez's case without a court order, without the knowledge or approval of the county court judge or the district court judge who issued the transfer order, and without notice

---

[8] We note that the State has filed an amended brief, which replaced the original brief. *See Tellez v. State*, No. 08-13-00141-CR, 2015 WL 5449728, at \*2 (Tex. App.—El Paso Sept. 16, 2015, pet. ref'd) (not designated for publication) ("The filing of an amended brief, in contrast with a supplemental brief, operates to replace the original brief."). We therefore only discuss the State's original brief for the purpose of providing background information related to the dispute in this case regarding the contents and accuracy of the clerk's record.

to the defense. Gonzalez Fernandez further alleged the true-bill list itself had been altered after the date on which the transfer order was filed in the county court's office, by the county clerk's office's addition of a handwritten county court cause number for each defendant identified in the list.

Gonzalez Fernandez asked this Court to abate the appeal to determine whether the "dismissal order by the Trial Court was based upon a one-page unaltered 'Order of Certification and Transfer,' without any exhibit attached." In addition, Gonzalez Fernandez requested that this Court examine whether the district attorney's office should be sanctioned for its conduct. Gonzalez Fernandez requested that we remand the matter to the trial court "to make findings to be included in the Clerk's Record on Appeal" with respect to those issues.

## C.    The abatement hearing

On October 29, 2024, after considering the State's initial brief and Gonzalez Fernandez's motion to abate, we determined that there was good cause to remand the case, along with 58 related appeals, to the county court to determine whether the clerk's record was defective or inaccurate, and, if so, what was necessary to conform the record to accurately reflect the proceedings in the county court. *See* Tex. R. App. P. 2 (authorizing an appellate court to suspend a rule's normal operation and order a different procedure for good cause); 34.5(d) (requiring an appellate clerk to instruct a trial court clerk to correct any defects or inaccuracies in a clerk's record); 34.6(e)(2) (requiring a trial court, after providing notice and holding a hearing, to settle any dispute regarding an inaccuracy in the reporter's record). We therefore granted Gonzalez Fernandez's motion, abated the case to the trial court for an evidentiary hearing, and directed the county court to make findings of fact after holding its hearing.

The county court held a hearing pursuant to our abatement order over the course of three days in November and December 2024.

**(1) Testimony relating to the filing of the indictment and transfer order in the county court**

At the hearing, an assistant district attorney, Jennifer VandenBosch, testified that she was the prosecutor assigned to present the 59 cases at issue in the hearing, including Gonzalez Fernandez's, for indictment on May 21, 2024. VandenBosch further testified that she prepared the true-bill list for each of the misdemeanor cases on which the grand jury voted on May 21, 2024, and that she then provided the indictments and the true-bill list to the grand jury, who provided them to the district clerk's office that same day.[9] She also believed the district clerk provided the indictments and the true-bill list to the county clerk for filing, but she acknowledged not having any personal knowledge regarding what documents or exhibits, if any, were attached to the transfer order when the district clerk provided the documents to the county clerk for filing.

Laura Yeager testified that at the time the grand jury provided the district clerk's office with the 59 indictments, she was employed as district clerk administrative support manager. She testified that, in accordance with what she believed was the court's policy in such cases, she and another clerk received the 59 indictments and the true-bill list from the grand jury and created a transfer order for the "grand jury judge" to sign. She identified State's Exhibit 2A—a purported copy of the May 21st order—as the document her office "processed . . . back in May [2024] where we created the order and presented it to the judge for signature."[10]

---

[9] VandenBosch later testified that she "was not present when the bills went from the grand jury to the clerk." Rather, she generated a true-bill list for the cases for which the grand jury had returned an indictment charging a defendant with a misdemeanor offense, and she placed the list "on top of the bills for that whole group to go to the district clerk's office."

[10] State's Exhibit 2A consists of a copy of the May 21st transfer order with the true-bill list attached. Yeager did not, however, testify that Exhibit 2A was a true and correct copy of the transfer order as signed by the district court judge, nor did she testify that the true-bill list was attached to the order when the order was created or presented to the judge for signature. As a result, the county court sustained an objection to the admission of the exhibit based on lack of foundation and relevance, and the exhibit was not admitted into evidence at the hearing.

9

Yeager also testified that pursuant to their standard practice, the district clerk was responsible for delivering the documents to the county clerk's office, which would have included "the [signed] order, the true bill list, and the indictments attached." However, Yeager testified that she did not deliver the documents to the county clerk's office that day; Alyssa Barraza—who no longer worked for the district clerk's office and who did not testify at the hearing—had taken the documents to the county clerk's office and handed them to Cheryl Villa, a clerk there. Yeager therefore did not know if any of the documents were physically attached to each other. She further explained that pursuant to their standard practice, the district clerk's office neither files nor keeps a copy of misdemeanor indictments to be transferred to the county court. According to Yeager, misdemeanor indictments are only filed with the county clerk's office.

Villa testified that she was the county clerk employee who received the documents from the district clerk's office on May 21, 2024. Villa and Diannia Leyva, another employee in the county clerk's office, worked together to file the documents. Both recalled that a deputy district clerk had provided the clerk's office a "stack of documents," which included 59 indictments, a transfer order, and an eight-page true-bill list;[11] however, they agreed that the true-bill list was not physically attached to the order. Leyva further testified that nothing the clerk's office received indicated the true-bill list was intended to be an exhibit to the transfer order. Instead, they viewed it as a list created to assist the clerk's office in opening cases based upon the indictments received by the county clerk's office, filing the indictments in those cases, and assigning them cause numbers. The clerks therefore only used the true-bill list to keep track of the indictments as they opened each case, writing the newly created county court cause numbers on the list as they did so. Accordingly, when they opened each case, they only filed the defendant's indictment and the one-

---

[11] The eight-page true-bill list was stapled together.

10

page transfer order. They did not include the true-bill list or any other exhibit in the court's file at the time.

### (2) Testimony relating to the modification of the county court's file

Preston Munson, one of the assistant district attorneys who participated in the June 6, 2024 hearing, testified that he contacted VandenBosch after the hearing to address the lack of an exhibit attached to the transfer order, assuming it was a county clerk clerical error. Munson testified that he did not take any other steps to address the issue and did not file anything with either the county court or the district court to attempt to correct the file.

VandenBosch testified that she first learned of problems with the transfer order when Munson contacted her, after which she immediately contacted Leyva at the county clerk's office. Because VandenBosch believed the district court intended to include the true-bill list as part of the transfer order, she informed Levya that an attachment was "missing" and asked: "How does this get corrected?" According to VandenBosch, Leyva then looked through the file and informed VandenBosch she had found the exhibit and would "fix it." VandenBosch acknowledged that she never filed a motion to amend or correct the transfer order, as she did not believe it was necessary, thinking the failure to file the list was a clerical error.

Leyva testified that when VandenBosch contacted her, VandenBosch informed her that the transfer order was missing an exhibit and the clerk's office needed to "correct" the error because it had been filed "incorrectly." In particular, Leyva recalled VandenBosch telling her "the true bill list . . . should have been attached to the order." That same day, Leyva and two other deputy clerks, including Villa, filed the true-bill list—with the county court cause numbers handwritten on the list—and inserted the list in the clerk's record immediately following the transfer order in all 59 files. Both Levya and Villa recalled doing so without any intervention by or direction from any court. They did not notify the court or defendants that they had added the true-bill list to the files.

11

## D. The county court's findings of fact and conclusions of law

Following the hearing, the county court entered findings of fact and conclusions of law to address this Court's questions regarding whether the clerk's record, as filed with this Court, was defective or inaccurate. By way of background, the county court recounted what occurred at the June 6, 2024 hearing, stating that he took "judicial notice" at the hearing that the transfer order in the court's file in each of the cases consisted of a one-page document, which did not include any information identifying the cases to be transferred and did not have any exhibit attached. The judge recalled the State blaming the issue on a "clerical error." He gave "the State an opportunity to investigate and explain the missing exhibit," but the State did not file any motion or request related to the transfer order, nor did it indicate any intent to do so. He explained that he therefore dismissed the indictments on June 9, 2024.

The court made the following findings of fact: the transfer order had been received "as a one-page document with no attachment"; the county clerk's office "also received eight pages stapled together which contained the notation true bill list on the upper left-hand corner of each page"; a "copy of the true bill list was improperly added to the" transfer order after the June 6th hearing; and the true-bill list added to the transfer order had "handwritten case numbers on it" and was therefore "not the same true bill list that was received by the county clerk's office on May 21, 2024, and . . . cannot be the Exhibit A referenced in the" transfer order. The court further found that the true-bill list was added to the transfer order "seventeen days after it was originally filed" and "without notice to Defense counsel, without notice to the trial [c]ourt and without court authorization."[12]

---

[12] Although the final two findings "appear[] among the conclusions of law, the designation is not controlling and we may treat [them] as [] finding[s] of fact." *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979).

Based on these findings, the county court concluded that the current clerk's record was "not an accurate representation of the filings that had been made at the time the judgment on appeal was issued." The county court further concluded that, to "conform" the court files in all 59 cases to the record as it appeared at all relevant times in the trial court proceedings, the Order of Certification and Transfer should be a "one-page document" and "[t]he true bill list added to the [transfer order] should be removed." Finally, the court concluded that the State had not acted in "good faith," because the State failed to notify the court of the modification to the court's file and refused to cooperate with defense counsel and the court to ensure that a correct record was sent to this Court.

**E. Gonzalez Fernandez's motion for sanctions and the State's objections to the county court's findings and conclusions**

After the abatement hearing, Gonzalez Fernandez filed a motion in this Court requesting sanctions against both the 34th Judicial District Attorney's Office and specified assistant district attorneys. In the motion, Gonzalez Fernandez contended the State had not acted in good faith by directing the clerk's office to modify the court's file without judicial intervention and without notifying defense counsel; by failing to cooperate with defense counsel and the county court to ensure the appellate record was accurate; and by allegedly making false or misleading statements in its appellate brief. Gonzalez Fernandez sought dismissal of his case as a remedy, as well as payment for the "hours spent by defense counsel in correcting the Clerk's Record and responding to frivolous filings" and any other sanctions this Court deems "appropriate."

The State opposed the motion, disclaiming any wrongdoing. In addition, the State filed an objection to the county court's findings in this Court, contending the findings had no basis in the record and arguing that "[t]he trial court's findings should be struck or at least ignored."

13

On March 26, 2025, we issued an order addressing Gonzalez Fernandez's motion and the State's objections. At that time, we declined to dispose of the motion and we declined to strike or ignore the trial court's findings. Instead, we carried Gonzalez Fernandez's motion for sanctions with the case to decide it with the State's appeal, and we ruled that we would review and consider the trial court's findings in our deliberations. *See* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."), 34.5(c)(3) ("Any supplemental clerk's record will be part of the appellate record."), 34.6(d) ("Any supplemental reporter's record is part of the appellate record."). We thereafter set a new briefing schedule to provide the State with an opportunity to file an amended brief in light of the supplemental records and to set a deadline for Gonzalez Fernandez's brief.

## III. DISCUSSION

In a single issue on appeal, the State contends the trial court erred by dismissing the indictment. In support, the State argues that the clerk's record includes an order that properly transferred Gonzalez Fernandez's case to, and conferred jurisdiction on, the county court. The State further argues that, if the transfer of the case was deficient, the proper remedy was to transfer the case "back to the grand-jury court[,]" not to dismiss the case. The State therefore seeks reversal of the trial court's order dismissing the case and, in the event we determine that the transfer order was deficient, an order directing the county court to transfer the case back to the "grand-jury court."

### A. Standard of review

In reviewing the dismissal of an indictment, we apply a bifurcated standard of review. *See State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We give "almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness." *Id*. However, we apply "a *de*

14

*novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id*.

Here, because the county court's dismissal order was not based on testimonial evidence and our decision depends exclusively on questions of law and mixed questions of law and fact that do not rely upon the credibility of witnesses for determination, we review the issue de novo. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) ("When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue."); *see also Mungin v. State*, 192 S.W.3d 793, 794 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (recognizing that the adequacy of an indictment is a question of law that an appellate court reviews de novo).

### B. Applicable law

#### (1) Law on jurisdiction

"The term 'jurisdiction' refers to the power of a court to hear a controversy and make decisions that are legally binding on the parties involved." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009) (citing *Dears v. State*, 154 S.W.3d 610, 612 (Tex. Crim. App. 2005)); *State v. Barrera*, 722 S.W.3d 894, 905–09 (Tex. App.—El Paso 2025, pet. filed) (per curiam). Because "jurisdiction is an absolute systemic requirement," the Court of Criminal Appeals has recognized that "[i]f there is no jurisdiction, the court has no power to act." *Dunbar*, 297 S.W.3d at 780; *Barrera*, 722 S.W.3d at 905–06. "A trial court's jurisdiction over a criminal case consists of the power of the court over the subject matter of the case, conveyed by statute or constitutional provision, coupled with personal jurisdiction over the accused[.]" *Dunbar*, 297 S.W.3d at 780 (cleaned up); *Jenkins v. State*, 592 S.W.3d 894, 898 (Tex. Crim. App. 2018); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981); *Barrera*, 722 S.W.3d at 906. "[A] lack of personal or

subject-matter jurisdiction deprives a court of any authority to render a judgment." *Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014); *Barrera*, 722 S.W.3d at 906.

"Subject-matter jurisdiction depends not only on the grant of authority to the trial court in the Constitution and the statutes, but also on its being invoked for the particular case before the court by the State's pleadings." *Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009); *see also Ex parte Caldwell*, 383 S.W.2d 587, 589 (Tex. Crim. App. 1964) (opinion on State's motion for rehearing) ("Jurisdiction of a court must be legally invoked, and when not legally invoked, the power of the court to act is as absent as if it did not exist."); *State v. Olsen*, 360 S.W.2d 398, 400 (Tex. 1962) (same), *overruled on other grounds by Jackson v. State*, 548 S.W.2d 685, 690 n.1 (Tex. Crim. App. 1977). Thus, "subject-matter jurisdiction requires both a general grant of authority to the trial court *and* a charging instrument that invokes that jurisdiction over the particular case." *Trejo*, 280 S.W.3d at 260. Similarly, a court only obtains personal jurisdiction over a defendant when a valid charging instrument has been properly filed in its court. *Barrera*, 722 S.W.3d at 906 (citing *Dunbar*, 297 S.W.3d at 780; *Jenkins*, 592 S.W.3d at 898; *Trejo*, 280 S.W.3d at 260); *see Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim. App. [Panel Op.] 1980) ("[C]riminal jurisdiction over the person cannot be conferred upon the district court solely by the accused's appearance, but requires the due return of a felony indictment, or the accused's personal affirmative waiver thereof and the return of a valid felony information upon complaint."). In other words, a trial court's personal jurisdiction over a defendant "is invoked in felony prosecutions by the filing of [an] indictment or information if indictment is waived." *Dunbar*, 297 S.W.3d at 780 (quoting *Fairfield*, 610 S.W.3d at 779).

If a court lacks jurisdiction over a case, it lacks "authority to render any judgment other than one of dismissal." *Garcia*, 596 S.W.2d at 528 n.5 (cleaned up); *see Barrera*, 722 S.W.3d at

915. Thus, "[i]t is well-established that when a trial court lacks jurisdiction to hear a case, the proper remedy is dismissal." *Barrera*, 722 S.W.3d at 915.

### (2) Required procedures to file an indicted misdemeanor offense and transfer an indicted misdemeanor offense to a county court

District courts have jurisdiction over felony offenses; misdemeanor offenses involving official misconduct; and misdemeanor offenses punishable by confinement in jail that are transferred to the district court, after the defendant has pleaded not guilty, from a county court presided over by a judge who is not a licensed attorney. *See* Tex. Code Crim. Proc. Ann. art. 4.05; Tex. Const. art. V, § 8; *Barrera*, 722 S.W.3d at 906 (citing *Trejo*, 280 S.W.3d at 263 (Keller, P.J., concurring)). Only county courts, however, have jurisdiction over a misdemeanor offense such as the one at issue here.[13] Nevertheless, "a grand jury is authorized to inquire into misdemeanors and return indictments for such offenses." *Barrera*, 722 S.W.3d at 907 (citing Tex. Const. art. V, § 17; *Hullum v. State*, 415 S.W.2d 192, 195 (Tex. Crim. App. 1966); *Quarles v. State*, 385 S.W.2d 395, 396 (Tex. Crim. App. 1964) ("There can be no question that a grand jury may return an indictment charging a misdemeanor.")). And, although district courts lack jurisdiction over most misdemeanor offenses, including the misdemeanor offense at issue in this case, an indictment charging a defendant with the commission of a misdemeanor offense must be presented to and filed in a district court, because "an indictment may not be presented directly to a county court." *Barrera*, 722 S.W.3d at 909–10, 912; *see* Tex. Const. art. V, § 17; Tex. Code Crim. Proc. Ann. art. 21.02(2)

---

[13] *See* Tex. Code Crim. Proc. Ann. arts. 3.04 (defining official misconduct), 4.05 (providing that a district court has jurisdiction over felony cases, misdemeanor cases involving official misconduct, and misdemeanor cases transferred to the district court under Article 4.17), 4.07 (providing that county courts have jurisdiction over "all misdemeanors of which exclusive original jurisdiction is not given to the justice court, and when the fine to be imposed shall exceed five hundred dollars"), 4.11 (providing that justice courts have jurisdiction over criminal cases that are punishable by fine only or by a fine and a sanction that does not include confinement or imprisonment or that arise under a specific chapter of the Alcoholic Beverage Code); Tex. Penal Code Ann. §§ 12.22 (providing that a Class B misdemeanor offense is punishable by a fine not to exceed $2,000, confinement in jail for not more than 180 days, or "both such fine and confinement"), 42.02(a) (defining riot offense), (e) (classifying the offense as a Class B misdemeanor).

(stating an indictment is deemed sufficient if it appears the indictment "was presented in the district court of the county where the grand jury is in session"); *Coker v. State*, 7 Tex. Ct. App. 83, 85 (1879) (stating that "all indictments are presentable only in the District Courts"); *Austin v. State*, 70 S.W. 724, 725 (Tex. Crim. App. 1897) (stating "indictments could not be filed" directly in a county court); *Hyatt v. State*, 135 S.W. 142, 142 (Tex. Crim. App. 1911) ("There is no authority of law for the presentment in the county court of an indictment."). Thus, when a grand jury returns an indictment charging a defendant with a misdemeanor offense, the indictment must be presented to a district court or to the district clerk, and the district clerk must open a case, provide the case with a file number, and file the indictment. *See* Tex. Code Crim. Proc. Ann. art. 20A.304 (requiring clerk, upon entering the fact of presentment of an indictment in the clerk's record, to note the file number of the indictment); *Barrera*, 722 S.W.3d at 911; *Lynn v. State*, 13 S.W. 867, 868 (Tex. Crim. App. 1890) (stating "there must be a file number upon the indictment in the district court, and this file number is evidently for the purpose of designating and identifying the cause").

After an indictment charging a defendant with a misdemeanor over which a district court lacks jurisdiction has been filed, the district court in which the indictment was filed must "make an order transferring the [indictment] to such inferior court as may have jurisdiction, stating in such order the cause transferred and to what court transferred." Tex. Code Crim. Proc. Ann. art. 21.26; *see* Tex. Const. art. V, § 17 (stating all indictments charging misdemeanor offenses "returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial"); *Barrera*, 722 S.W.3d at 908 (quoting Tex. Const. art. V, § 17). When issuing the order, the district court may enter a general order transferring a number of cases, but the order must identify each cause to be transferred. *See* Tex. Code Crim. Proc. Ann. art. 21.26 (requiring transfer order to identify the cause to be transferred); *Dittforth v.*

18

*State*, 80 S.W. 628, 628 (Tex. Crim. App. 1904) ("It has been held that in the transfer of cases a general order, giving the numbers in the district court, and character of offense, is sufficient, and that a particular order is not necessary in each case.").

Although the trial court is statutorily required to issue an order transferring a case to a proper court upon the filing of an indictment that charges an offense over which the district court lacks jurisdiction, *see* Tex. Code Crim. Proc. Ann. art. 21.26, "the burden is on the [S]tate to show that [a] particular case was ordered transferred." *Dittforth*, 80 S.W. at 628. And, to show that a case was ordered transferred, "it is a sufficient description and identification of the cause to state its file number . . . ." *Lynn*, 13 S.W. at 868; *see Dittforth*, 80 S.W. at 628 (stating that a description of the case that provides the district court's case number and identifies the offense charged constitute a sufficient description to identify a case to be transferred).

Once the district court signs a transfer order identifying a case to be transferred from the district court to a county court, the clerk of the district court must "deliver the indictment[] . . . , together with all the papers relating to [the] case, to the proper court or justice, as directed in the order of transfer . . . ." Tex. Code Crim. Proc. Ann. art. 21.28; *Barrera*, 722 S.W.3d at 908, 912. In addition, the district court clerk must provide the county court clerk with a "certified copy" of all proceedings that took place in the district court, together with a bill of costs. Tex. Code Crim. Proc. Ann. art. 21.28; *Barrera*, 722 S.W.3d at 908, 912; *Austin*, 40 S.W. at 725. Finally, the district clerk must send a transfer certificate and an index of transferred documents to the county clerk. *See* Tex. Gov't Code Ann. § 51.3071(a)(1). The county clerk, in turn, must receive and file all of the papers transferred from the district clerk, including the indictment. Tex. Code Crim. Proc. Ann. art. 2A.153(b)(1); *see* Tex. Gov't Code Ann. § 51.3071(c).

19

The transfer order is "essential to the jurisdiction of the" county court. *Horton v. State*, 20 S.W.2d 1111, 1111 (Tex. Crim. App. 1929) (per curiam); *Barrera*, 722 S.W.3d at 912–13, 912 (quoting *Horton*, 20 S.W.2d at 1111); *see Austin*, 40 S.W. at 725 (recognizing that without a proper order transferring an indictment to an inferior court, "the inferior court can acquire no jurisdiction"); *Bird v. State*, 91 S.W. 791, 791 (Tex. Crim. App. 1906) (recognizing that an order transferring jurisdiction from the district court to the county court is required "in order to attach jurisdiction of the county court"). The transfer process, executed pursuant to the transfer order, results in the proper filing of the indictment in the county court, thereby invoking the county court's jurisdiction over the case. *See* Tex. Code Crim. Proc. Ann. art. 21.28 (requiring district clerk to deliver an indictment and all papers in a case to the proper court, as directed in the transfer order); Tex. Code Crim. Proc. Ann. art. 2A.153(b)(1) (requiring clerk of a county court to receive and file all papers delivered to a county court); Tex. Gov't Code Ann. § 51.3071(c) (requiring clerk of the court receiving the transferred case to accept the documents transferred and docket the case); *Austin*, 40 S.W. at 725 (stating indictments cannot be filed directly in a county court and an inferior court cannot acquire jurisdiction over an indictment without a proper transfer order); *Trejo*, 280 S.W.3d at 260 (stating jurisdiction must be invoked by the State's pleadings); *Dunbar*, 297 S.W.3d at 780 (stating personal jurisdiction over a defendant is invoked by the filing of an indictment).

## C. Analysis

On appeal, the State contends the trial court abused its discretion when it dismissed the case against Gonzalez Fernandez, because (1) the transfer of the case to the county court was complete on May 21, 2024, when "the 9-page transfer order"—consisting of the transfer order itself and the true-bill list—was received by the county clerk's office, and "the transfer was sufficient to confer jurisdiction in the county court[]," and (2) even if the transfer of the case to the

county court was deficient, the proper remedy was not to dismiss the case but to transfer the case "back to the grand-jury court." We conclude, however, that the county court correctly held that the transfer order was a one-page document that did not transfer this case to the county court and did not invoke the county court's jurisdiction; that this case was not properly transferred to the county court, and the county court's jurisdiction was not invoked over this case, regardless of whether the true-bill list was the exhibit identified in the transfer order, as claimed by the State; and that, because its jurisdiction was not properly invoked, the county court properly dismissed this case.

**(1) The county court did not err by finding that the transfer order was a one-page document that neither transferred a case against Gonzalez Fernandez to county court nor invoked the county court's jurisdiction**

In its amended brief, the State argues that a document is considered "'filed' when it is tendered to the clerk or otherwise put under the custody or control of the clerk" and that "a reviewing court, absent evidence of impropriety, [must] indulge every presumption in favor of the regularity of the proceedings and documents in [a] lower court." The State therefore contends that the transfer order, true-bill list, and indictment were all "filed" in the county court on May 21, 2024, when they were received by the county clerk's office, and that we must presume that the clerk's record, which contains "an order of certification and transfer along with eight pages of a true-bill list," is correct. Finally, the State concludes that because "all the transfer documents"—including the transfer order, the true-bill list, and the indictment—were filed on May 21, 2024, this case was successfully transferred to the county court on that date, and the county court abused its discretion by dismissing this case.

For purposes of determining when a document is filed by a party, "an instrument is deemed in law filed at the time it is left with the clerk, regardless of whether or not a file mark is placed on the instrument and regardless of whether the file mark gives some other date of filing." *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004) (quoting *Standard Fire Ins. Co. v. LaCoke*, 585 S.W.2d

21

678, 680 (Tex. 1979)); *see State v. Wachtendorf*, 475 S.W.3d 895, 901 (Tex. Crim. App. 2015) (applying the Texas Supreme Court's holding "that a document is 'filed,' not when it is file-stamped, but 'when it is tendered to the clerk, or otherwise put under the custody or control of the clerk'") (quoting *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1994)); *Stansberry v. State*, 239 S.W.3d 260, 263 (Tex. Crim. App. 2007) (adopting the holding of the Texas Supreme Court "that a court document is filed 'when it is placed in the custody or control of the clerk'") (quoting *LaCoke*, 585 S.W.2d at 681). "Once a document is in the clerk's custody, an innocent party is not responsible for any administrative or clerical error. Therefore, once a party tenders a document to the clerk of the court, . . ." the party may not be prejudiced by any error related to that document that may occur in the clerk's office. *Stansberry*, 239 S.W.3d at 261, 263; *see Warner*, 135 S.W.3d at 684 ("Once a party has satisfied his duty to put a legal instrument in the custody and the control of the court clerk, he should not be penalized for errors made by the court clerk.").

Further, under the presumption of regularity, we must presume, in the absence of evidence to the contrary, "the regularity of the proceedings and documents in [a] lower court." *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975); *see Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) (en banc) (citing *McCloud*, 527 S.W.2d at 887); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (en banc) (citing *McCloud*, 527 S.W.2d at 887; *Nichols v. State*, 511 S.W.2d 945, 947–48 (Tex. Crim. App. 1974)). "This means that the recitations in the records of the trial court, such as a formal judgment, are binding in the absence of direct proof of their falsity." *Breazeale*, 683 S.W.2d at 450.

Here, as originally filed, the clerk's record contains an "Order of Certification and Transfer," signed by a district court judge, stating that a grand jury returned indictments related to the "misdemeanor cases listed in the Charging Instrument Report consisting of 8 pages attached

hereto as Exhibit A, dated May 21, 2024 and incorporated by reference as if fully set forth herein" into the district court and ordering the transfer of "each of the cases listed on Exhibit A attached hereto . . . to the County Courts of El Paso County, Texas." This order is then immediately followed in the clerk's record by eight pages, each of which indicates, in the upper-left corner of the page, that it is part of a "TRUE BILL LIST" from May 21, 2024. None of the eight pages identified as part of the true-bill list, however, are marked as being part of a "Charging Instrument Report," as "Exhibit A," or even as an exhibit of any kind. Moreover, the clerk's record contains the trial court's dismissal order, in which the county court found that the record at the time the county court dismissed this case contained "a one-page document titled 'Order of Certification and Transfer,'" that "no document was attached" to the transfer order, and that "the Order did not transfer any case" to the county court. Challenging the accuracy of the contents of the clerk's record, Gonzalez Fernandez filed a motion to abate this appeal on October 25, 2024, contending that the transfer order was a one-page document and that the clerk's record on file with this Court had been improperly altered.

We therefore abated the appeal and remanded the case to the county court to determine whether there were any deficiencies or inaccuracies in the clerk's record that needed to be corrected.

The testimony at the abatement hearing established that, although the transfer order and the true-bill list were received by the county clerk's office at the same time on May 21, 2024, the true-bill list was not attached to the transfer order. The testimony also showed that the county clerk's office did not receive anything to indicate the true-bill list was intended to be an exhibit to the transfer order. Instead, the deputy county clerks viewed the true-bill list as a document provided to help them keep track of the indictments received by the county clerk's office while they opened

23

new cases based on the indictments. The county clerks therefore only filed the indictment and the one-page transfer order when they opened each case; they did not file the true-bill list in the court's file. Finally, the testimony established that the deputy county clerks added the true-bill list to the court's file on June 6, 2024, after an assistant district attorney told a deputy county clerk that the transfer order was missing an exhibit and had been incorrectly filed.

At the conclusion of the hearing, the county court found that the transfer order had been received "as a one-page document with no attachment," that the county clerk's office "also received eight pages stapled together which contained the notation true bill list on the upper left-hand corner of each page," that the true-bill list was not labeled as "Exhibit A," that the county clerk's office received no document labeled as "Exhibit A," and that the true-bill list was improperly added to the transfer order on June 6, 2024. The county court then concluded that the current clerk's record was not accurate, the transfer order should be a one-page document, and "[t]he true-bill list added to the [transfer order] should be removed."

In its amended brief, the State contends that the trial court's findings of fact and conclusions of law are unsupported by the facts and should be disregarded, and the State repeatedly refers to the "9 pages" of the transfer order, the "9-page order," and the "9-page transfer order." According to the State, "it is readily apparent that the first page of the [transfer] order refers to the 8-page true-bill list dated May 21, 2024, which immediately follows the first page" in the clerk's record. The State also asserts, in its reply brief, that "there is no requirement that a list of cases being transferred be physically attached to a transfer order."

The State does not, however, provide any argument or authority to establish or explain how it is "readily apparent" that the transfer order refers to the true-bill list or even how the true-bill list in this case could be considered as the "Exhibit A" to the transfer order when (1) the transfer

24

order specifically referred to Exhibit A as being attached to the transfer order, but the true-bill list was not so attached; (2) the transfer order described the attached Exhibit A as a "Charging Instrument Report," but the true-bill list was not labeled as a "Charging Instrument Report" and instead bears other labels, including "TRUE BILL LIST" and "120th Grand Jury Reindictment"; and (3) the transfer order stated the document listing the cases to transfer was attached "as Exhibit A," but the true-bill list was not marked as "Exhibit A" or otherwise marked as an exhibit. Further, nothing in the record shows that the county court clerk had any evidence before it, at the time when the transfer order and the true-bill list were received by the county clerk, indicating that the true-bill list was supposed to be an exhibit or attachment to the transfer order; in other words, nothing in the record shows that the county clerk erred by not filing the true-bill list as an exhibit to the transfer order when those documents were received in the county clerk's office on May 21, 2024.[14]

Moreover, as set forth above, the county court expressly recited in its June 9, 2024 order that the "document titled 'Order of Certification and Transfer'" that appeared in the record at the time of its ruling to dismiss this case was a one-page order with no attachment. The county court also found, after the abatement hearing, that the transfer order was received by the county clerk's office as a one-page document with no attachment; that although the evidence reflected that the county clerk's office received a copy of the true-bill list, it was not marked as Exhibit A; and that

---

[14] Nor does the record establish that the true-bill list was attached to or part of the transfer order when the order was signed by the district court judge. In fact, the testimony at the abatement hearing centered around the documents as presented to and received by the county clerk's office. Further, Laura Yeager, the only deputy district clerk to testify, stated that her personal involvement in the transfer process in this case involved "help[ing] the clerk that was taking care of this for the day look at the order and mak[e] sure she did everything correctly." Moreover, as acknowledged by the State in its amended brief, Yeager identified the State's Exhibit 2A—a copy of the transfer order with a copy of the true-bill list, absent the handwritten cause numbers, that the State offered but was not admitted at the abatement hearing—"as the order [the deputy district clerks] had prepared for the grand-jury judge's signature, to which the true-bill list at issue in these proceedings had been attached." Yeager did not, however, testify that the true-bill list was attached to the transfer order when the order was prepared or when it was signed by the district court judge. As a result, there is no evidence in the record that establishes the true-bill list was part of the transfer order when it was signed by the district court judge.

the county clerk's office did not receive any document labeled as "Exhibit A." Therefore, the trial court concluded that, to conform the Clerk's Record to the record as it appeared at all relevant times in the trial court proceeding, the "Order of Certification and Transfer" should be a one-page document, and the true-bill list should be removed.

On review, we find nothing in the record to belie the county court's findings of fact or conclusions of law or to rebut the recitations in his June 9, 2024 dismissal order.[15] As a result, even assuming, without deciding, that a presumption of regularity could apply to the contents of the clerk's record as a whole, the presumption of regularity works against the State in this case, because the evidence supports the county court's recitation, in the June 9, 2024 dismissal order, that the transfer order was a one-page document. *See, e.g.*, *Breazeale***,** 683 S.W.2d at 450 (holding that recitations in the trial court's records "are binding in the absence of direct proof of their falsity"). We therefore agree with Gonzalez Fernandez that, in accordance with the county court's findings, we must treat the transfer order as a one-page document, with no exhibit attached. *See Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007) ("If the parties have a dispute over what items are missing from the appellate record, or they dispute the accuracy or completeness of those items, the trial court will resolve that dispute."); *Rowell v. State*, 66 S.W.3d 279, 282 (Tex. Crim. App. 2001) (en banc) ("Inaccuracies in the reporter's record may be corrected, either by agreement of the parties or by a decision of the trial court.") *cf.* Tex. R. App. P. 34.6(e)(2) (requiring trial court to settle disputes related to the accuracy of the reporter's record and to "order the court reporter to conform the reporter's record . . . to what occurred in the trial court").

---

[15] We further find the evidence from the abatement hearing sufficient to support the county court's factual findings; we overrule the State's objections to the county court's findings of fact and conclusions of law, as asserted in the State's Response and Objections to Trial Court's Findings; and we decline to strike or ignore the county court's findings, as requested in the same filing.

Treating the transfer order as a one-page document without an attached exhibit, we disagree with the State's contention that the filing of "the transfer documents" in this case—consisting of the transfer order, the true-bill list, and the indictment—successfully transferred the case from the district court to the county court. The transfer order filed in the county court, which purported to transfer a group of misdemeanor cases to the county court, did not provide a cause number or a district clerk's file number to identify Gonzalez Fernandez's indictment, did not provide "a sufficient description and identification of" Gonzalez Fernandez's case to identify it as a case to be transferred, and did not, in fact, provide *any* information that would have allowed the district court clerk to identify his case as one of the cases to be transferred or that would have enabled the county court to determine that Gonzalez Fernandez's case had been ordered transferred to the county court. *See Lynn*, 13 S.W. at 868 (holding "it is a sufficient description and identification of the cause to state its file number . . ."); *Dittforth*, 80 S.W. at 628 (holding that providing the district court file number and the character of the offense is sufficient to identify a case to be transferred). The true-bill list, by contrast, did not purport to order the transfer of any cases from a district court to the county court.[16] Thus, because no other order directing the transfer of this case to the county

---

[16] Because we have determined that we must treat the transfer order as a one-page document and we find nothing in the true-bill list that could be construed as an order to transfer a case to the county court, we conclude that whether the true-bill list was deemed filed as a stand-alone document when it was received by the county clerk's office on May 21, 2024, has no bearing on whether this case was properly transferred to the county court or whether the county court's jurisdiction was properly invoked. We will therefore assume, without deciding, that the true-bill list was deemed filed as a stand-alone document when it was received in the county clerk's office on May 21, 2024.

Further, we note that the county court found, in its findings of fact issued at the conclusion of the abatement hearing, that the true-bill list in the clerk's record on appeal had been altered to include handwritten county court cause numbers, which were not on the list at the time the county clerk received them. The county court therefore concluded that the current clerk's record, as filed with this Court, was "not an accurate representation of the filings that had been made at the time the judgment on appeal was issued." We also note that the appellate rules provide that "[i]f the clerk's record is defective or inaccurate, the appellate clerk must inform the trial court clerk of the defect or inaccuracy and instruct the clerk to make the correction." Tex. R. App. P. 34.5(d).

Here, however, we find no need to order the clerk to strike the true-bill list from the record. Instead, to the extent we treat the true-bill list as part of the record in this case, we will treat the true-bill list as if it had been filed in an unaltered form and will ignore the handwritten cause numbers that appear on the right side of the document.

court appears in the record, the record contains no proper transfer order that could have invoked the county court's jurisdiction to consider the indictment against Gonzalez Fernandez. *See* Tex. Code Crim. Proc. Ann. art. 21.26; *Horton*, 20 S.W.2d at 1111; *Barrera*, 722 S.W.3d at 909–10, 912–13 (quoting *Horton*, 20 S.W.2d at 1111); *Austin*, 40 S.W. at 725; *Bird*, 91 S.W. at 791. Accordingly, we conclude that the county court did not err by finding that the transfer order was a one-page document, that the one-page transfer order filed in this case failed to successfully transfer this case to the county court, and that the transfer order failed to invoke the county court's jurisdiction over the case.

**(2)  The State failed to show that this case was properly transferred to the county court, regardless of whether the true-bill list is the exhibit referenced in the transfer order**

As discussed above, the State argues that because all of "the transfer documents" were filed on May 21, 2024, this case was successfully transferred to the county court on that date and the county court abused its discretion by dismissing this case. But nothing in the record shows that Gonzalez Fernandez's case was ordered to be transferred to the county court or that the county court's jurisdiction was invoked over Gonzalez Fernandez's case, regardless of whether the true-bill list is the exhibit referenced in the transfer order, as contended by the State.

When a grand jury returns an indictment charging a defendant with a misdemeanor offense, the district clerk must open a case against the defendant based on the indictment. *See* Texas. Code Crim. Proc. Ann. art. 20A.304; *Barrera*, 722 S.W.3d at 911; *Lynn*, 13 S.W. at 868. The district court must then order the indictment transferred to a court with jurisdiction over the case, and the district clerk must transfer the indictment, all the papers in the case, a bill of costs, a transfer certificate, and an index of transferred documents to the clerk of the appropriate court. *See* Tex. Const. art. V, § 17; Tex. Code Crim. Proc. Ann. arts. 21.26, 21.28; Tex. Gov't Code Ann.

§ 51.3071(c); *Barrera*, 722 S.W.3d at 908, 912; *Austin*, 40 S.W. at 725. Ultimately, "the burden is on the [S]tate to show that the particular case was ordered transferred." *Dittforth*, 80 S.W. at 628.

Here, nothing in the record supports a finding that the district court ordered *this* case transferred to the county court. First, nothing in the record shows that the district clerk's office opened a case against Gonzalez Fernandez prior to delivering Gonzalez Fernandez's indictment to the county court, or that it complied with Article 21.28 of the Code of Criminal Procedure by delivering to the county court clerk the "papers" in the case, a certified copy of all the proceedings from the district court, or a bill of the costs that accrued in the district court. *See* Tex. Code Crim. Proc. Ann. art 21.28; *Barrera*, 722 S.W.3d at 911–12; *Austin*, 40 S.W. at 725. While the record reflects that the district clerk file-stamped the district court's transfer order, no district clerk file stamp appears on any other document in the record—even the indictment lacks a district clerk file stamp—and no district court cause number or file number appears on the transfer order, the indictment itself, or anywhere else in the record.[17] But without the district court clerk having properly filed an indictment and opened a case in a district court, there was no case pending in the district court that could have been transferred. *See Barrera*, 722 S.W.3d at 912; Tex. Code Crim. Proc. Ann. art. 21.26 (entitled "Order transferring cases" and requiring a district court to state "the cause transferred"), art. 21.28 (requiring district court clerk to "deliver the indictments in all *cases* transferred, together with all the papers relating to each *case*" (emphasis added)); *see also* Tex. Code Crim. Proc. Ann. art. 2A.153(b)(1) (requiring the clerk of a court to receive and file all papers submitted in criminal proceedings).

---

[17] The testimony presented at the abatement hearing confirmed that the district clerk's office did not open a case for Gonzalez Fernandez, did not file an indictment against Gonzalez Fernandez in the district court's records, and did not assign a cause number to his indictment.

Additionally, nothing in the record identifies *any* district court case to transfer to the county court. Neither the transfer order nor the true-bill list—which the State contends is the exhibit referenced in the transfer order that identifies the cases to be transferred—identifies any district court cases that could be transferred. Instead, the true-bill list contains a list of *county court* cases, identified by *county court* cause numbers. But it is logically impossible for a district court to transfer a case to a county court when the case is already pending in that county court. Before a district court can transfer a case to a county court, the case must first be pending in the district court. Therefore, because there is no evidence that any of the cases identified in the true-bill list were ever filed or pending in the district court, or that they were ever assigned district court cause numbers, none of the cases enumerated in the true-bill list could have been transferred from the district court to the county court.

Finally, both the transfer order and the true-bill list fail to identify *this* specific case as a case to be transferred to the county court; the cause number written at the top of the indictment pending in this case—county court cause number 20240C03755—is *not* included among the list of cause numbers identified in the true-bill list.[18] The true-bill list includes only one case against Gonzalez Fernandez, and that case is specifically identified as county court cause number 20240C02949, which is *not* the cause number for this case and therefore specifically identifies a *different* case.

---

[18] We note that the true-bill list includes a case showing Gonzalez Fernandez as the defendant that is identified both by (1) a typewritten cause number in the left-hand column of the list reflecting a different cause number than the trial court's cause number for this case and (2) a handwritten cause number added to the right hand side of the page reflecting the county court's cause number for this case. Nevertheless, the evidence at the abatement hearing proved, and the county court found, that no handwritten numbers appeared on the true-bill list at the time it was received by the county clerk's office and that the handwritten numbers on the true-bill list were added to it by the county clerks after they received it. Thus, the later-added handwritten cause numbers are not properly part of the true-bill list, and we will disregard them.

30

Thus, regardless of whether the true-bill list is the exhibit referenced in the transfer order as argued by the State, the transfer order did not transfer this case from the district court to the county court, because (1) neither the transfer order nor the true-bill list identified any district court cause against Gonzalez Fernandez to transfer to the county court, (2) neither the transfer order nor the true-bill list identified any case opened based on or otherwise associated with or initiated by the indictment pending in this case as a case to transfer to the county court, and (3) the true-bill list specifically identified only a *different* case against Gonzalez Fernandez, identified by cause number 20240C02949, as a case to be transferred, without providing any information identifying *this* case as a case to be transferred.

We therefore conclude that the State failed to establish that this case was properly transferred from a district court to the county court, and that the county court properly found that its jurisdiction was not invoked in this case. *Barrera*, 722 S.W.3d at 911–16.

**(3)  Dismissal was the proper remedy**

As an alternative argument, the State contends, in its amended brief, that even if the transfer order was defective, the county court was not deprived of jurisdiction, and the county court should have remanded the case "back to the court with the sitting grand jury, the 120th District Court," to address any issues with the order. According to the State, dismissing the indictment was an "unauthorized remedy," and the State therefore requests that we reverse the county court's dismissal order and remand the matter to the district court for further proceedings. However, we recently rejected a similar argument in *State v. Barrera*, 722 S.W.3d 894 (Tex. App.—El Paso 2025, pet. filed). In *Barrera*, we held that dismissal of the appeal was the proper remedy when the State failed to show that a misdemeanor offense charged by indictment was properly transferred from a district court to the county court. *Barrera*, 722 S.W.3d at 914–16; *see Dittforth*, 80 S.W. at 628 ("[T]he burden is on the [S]tate to show that [a] particular case was ordered transferred.").

31

The State is making virtually the same argument here and relies on the same authority that it did in *Barrera* for the proposition that, when faced with a deficient transfer order, a county court may in essence re-transfer the case to the district court to remedy the situation. We disagree and conclude, as we did in *Barrera*, that dismissal is the proper remedy.

First, the State relies on Article 21.30 of the Texas Code of Criminal Procedure, which provides that "[w]hen a cause has been improvidently transferred to a court which has no jurisdiction of the same, the court to which it has been transferred shall order it to be re-transferred to the proper court; and the same proceedings shall be had as in the case of the original transfer." Tex. Code Crim. Proc. Ann. art. 21.30. But Article 21.30 only applies when "a 'case' has been opened in a court and then improvidently transferred to the wrong court, i.e., a court lacking subject-matter jurisdiction." *Barrera*, 722 S.W.3d at 914 (citing Tex. Code Crim. Proc. Ann. art. 21.30). In other words, Article 21.30 only grants authority to a court to re-transfer a case when the case was successfully, but "improvidently," transferred to a court that has no subject-matter jurisdiction over the case. Tex. Code Crim. Proc. Ann. art. 21.30. Thus, because (1) no case against Gonzalez Fernandez was successfully transferred to the county court and (2) no case against Gonzalez Fernandez was "improvidently" transferred to a court that had no jurisdiction over the subject matter of the case, Article 21.30 is inapplicable here. *See id.*

Further, Article 21.30 grants a court to which a case has been improvidently transferred jurisdiction to transfer the case to "the proper court." Tex. Code Crim. Proc. Ann. art. 21.30. But the court to which the State contends this case should have been re-transferred—the district court—lacks subject-matter jurisdiction over the case, and the State does not explain how a court that lacks subject-matter jurisdiction could be "the proper court" to which to transfer a case. In fact, if the county court had transferred this case to the district court, the district court would have

32

been a court to which the case had been "improvidently transferred" and would itself have been required to transfer the case to a "proper court." *Id.* We therefore decline to construe Article 21.30 as granting a court jurisdiction to *intentionally* transfer a case to a court that lacks subject-matter jurisdiction over the case, and we reject the State's argument that Article 21.30 authorized the county court to transfer Gonzalez Fernandez's case to the district court.

In addition, the State once again relies on *Ex parte Jones*, 682 S.W.2d 311 (Tex. Crim. App. 1984) (en banc) and *Harris v. State*, 565 S.W.2d 66, 68 (Tex. Crim. App. 1978) (en banc) for the proposition that a county court has the authority to transfer the defendants' indictments back to the district court. Neither case, however, supports the State's contention.

In both *Jones* and *Harris*, the defendant was convicted in a district court for one or more felony-level offenses and was sentenced to ten years' imprisonment. *Jones*, 682 S.W.2d at 312; *Harris*, 565 S.W.2d at 66–67. The relevant charged offenses in each case, however, alleged only offenses punishable as Class B misdemeanors. *Jones*, 682 S.W.2d at 313; *Harris*, 565 S.W.2d at 68. The Court of Criminal Appeals therefore reversed the convictions and remanded each case to the district court, so that the district court could transfer the case to a court with jurisdiction over misdemeanor offenses. *Jones*, 682 S.W.2d at 313; *Harris*, 565 S.W.2d at 68. Thus, contrary to the State's argument, neither case supports the proposition that a county court has jurisdiction or authority to transfer a misdemeanor offense to a district court.

It is fundamental that "a source of jurisdiction must be found to authorize" any action by the trial court. *State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002). "Without jurisdiction, [a] trial court has no power to act." *Id*. Further, "[j]urisdiction of a court must be legally invoked, and when not legally invoked, the power of the court to act is as absent as if it did not exist." *Ex parte Caldwell*, 383 S.W.2d 587, 589 (Tex. Crim. App. 1964). Thus, if a court lacks jurisdiction,

"it has no authority to render any judgment other than one of dismissal." *Garcia*, 596 S.W.2d at 528 n.5, 529 (cleaned up); *see Barrera*, 722 S.W.3d at 915 (cleaned up).

Here, the State has not identified a source of jurisdiction that would authorize the county court to transfer the indictment back to the "grand-jury judge or court" under the circumstances of this case, nor are we aware of any.

Accordingly, we conclude that the county court lacked jurisdiction to "transfer" Gonzalez Fernandez's case to the district court and that dismissal of his case was therefore the proper remedy. *Barrera*, 722 S.W.3d at 915–16 (citations omitted); *see Wilkins v. State*, 5 S.W.2d 770, 770 (Tex. Crim. App. 1928) ("If there was [no proper transfer], the prosecution should be dismissed."); *see generally Garcia*, 596 S.W.2d at 528 n.5 (Tex. Crim. App. 1980) (holding that when a court lacks jurisdiction, "it has no authority to render any judgment other than one of dismissal"). As such, we conclude that the county court acted properly in dismissing Gonzalez Fernandez's case. *Id.*

### D. Conclusion

Based on the foregoing, the State's sole issue on appeal is overruled. Next, we turn to Gonzalez Fernandez's motions for sanctions.

## IV. SANCTIONS

As set forth above, Gonzalez Fernandez seeks sanctions against the 34th Judicial District Attorney's Office and four of the State's prosecutors who were involved in the proceedings for the various actions they took in both the county court and this Court. Specifically, in his motion to abate, Gonzalez Fernandez requests that we impose sanctions against the 34th Judicial District Attorney's Office "for its violation of [Gonzalez Fernandez's] due process rights." Similarly, in his motion for sanctions, Gonzalez Fernandez requests that we impose sanctions against the 34th

Judicial District Attorney's Office and four assistant district attorneys "for their multiple violations of Rule 52.11 of the Texas Rules of Appellate Procedure, the Texas Disciplinary Rules of Professional Conduct, the United States and Texas Constitutions, and Section 37.10 of the Texas Penal Code." In both motions, Gonzalez Fernandez seeks dismissal of the case against him with prejudice and attorney's fees as a monetary sanction. For the reasons below, we deny Gonzalez Fernandez's request for sanctions.

First, to the extent Gonzalez Fernandez seeks dismissal of the case against him, a criminal case may generally only be dismissed (1) upon the request of a prosecutor, (2) if necessary and appropriate to neutralize the taint of a violation of the defendant's constitutional rights, or (3) if the trial court lacks jurisdiction. *See State v. Terrazas*, 962 S.W.2d 38, 40–42 (Tex. Crim. App. 1998) (en banc); *State v. Rodriguez-Gomez*, 716 S.W.3d 702, 713 (Tex. App.—San Antonio 2024, no pet.); *Barrera*, 722 S.W.3d at 915–16; *see also State v. Johnson*, 821 S.W.2d 609, 613–14 (Tex. Crim. App. 1991) (en banc) (holding a court lacks inherent power to dismiss a prosecution, a court may not dismiss a criminal case based on a prosecutor's failure to appear for trial, and a court only has authority to dismiss a criminal case without a request by the prosecutor "in certain circumstances"); *State v. Terrazas*, 962 S.W.2d 38, 44 (Tex. Crim. App. 1998) (Keller, P.J., dissenting) ("For example, disciplinary rule violations are not grounds for reversal of a conviction; any remedy for such violations must be sought through processes provided by the State Bar.") (citing *House v. State*, 947 S.W.2d 251, 252–53 (Tex. Crim. App. 1997)). Here, Gonzalez Fernandez fails to identify any specific violation of his constitutional rights that would warrant dismissal of his case with prejudice, fails to provide any argument or authority to establish a specific violation of his constitutional rights, and fails to provide any argument or authority to show that he is entitled to dismissal of his case with prejudice. But it is Gonzalez Fernandez's

responsibility, as the moving party, to cite to specific authority and to provide sufficient argument to support his motion and establish his right to relief. *See* Tex. R. App. P. 10.1(a)(2) (requiring a motion to "state with particularity the grounds on which it is based"); *Solomon v. Buckle*, 695 S.W.3d 664, 675 (Tex. App.—Houston [1st Dist.] 2024) (declining to impose sanctions because the movants failed to "identif[y], even in a general way, the legal framework—standard of review and applicable law—that applie[d] to their motion"); *Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (en banc) (holding that an appellant must cite specific legal authority and provide legal arguments based on that authority and that the court would not make novel legal arguments for the appellant); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) ("An argument that fails to cite supporting authority presents nothing for review."); *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) (holding that court would not make legal arguments for the appellant). We therefore conclude that Gonzalez Fernandez failed to establish a right to dismissal of his case with prejudice based on the State's allegedly sanctionable conduct.

Second, to the extent Gonzalez Fernandez seeks payment of his attorney's fees as a monetary sanction against the district attorney's office or against the individual prosecutors, he has failed to cite any specific legal authority or provide legal arguments based on that authority to show that monetary sanctions may be imposed against a prosecutor or a prosecutor's office based on prosecutorial actions taken, or prosecutorial decisions made, in the course of prosecuting a criminal case. *Cf. In re State*, 605 S.W.3d 721, 722, 728–29 (Tex. App.—Houston [1st Dist.] 2020, orig. proceeding) (granting mandamus relief and vacating trial court order imposing monetary sanction against the State because there was "no authority that suggest[ed] [the trial court] had the discretion to order the State to pay attorney fees or other monetary sanctions to counsel for" the defendant). But, again, it is Gonzalez Fernandez's responsibility to provide specific authority and

36

sufficient argument to support his motion and establish his right to relief. *See* Tex. R. App. P. 10.1(a)(2); *Solomon*, 695 S.W.3d at 675; *Bell*, 90 S.W.3d at 305; *Rocha*, 16 S.W.3d at 20; *Wyatt*, 23 S.W.3d at 23 n.5. We therefore conclude that Gonzalez Fernandez has not established a right to monetary sanctions or an award of attorney's fees.

Finally, even assuming, without deciding, that we could impose monetary sanctions against the State, Gonzalez Fernandez has failed to establish a basis for granting his request. *See In re Garcia*, No. 02-20-00161-CV, 2020 WL 4907330, at *4 (Tex. App.—Fort Worth Aug. 20, 2020, orig. proceeding) (mem. op.) (assuming, "without deciding, that a trial court has inherent authority to award attorney's fees to sanction bad-faith abuses of the judicial process in a criminal case"). Specifically, to the extent Gonzalez Fernandez requests sanctions based on alleged due process violations or alleged violations of the United States or Texas Constitutions or the Texas Disciplinary Rules of Professional Conduct, he fails to identify any such alleged violations and thereby fails to sustain his burden of stating the grounds on which his motion is based and fails to provide the State with notice of the basis upon which he is seeking sanctions that is sufficient to allow the State to respond. *See* Tex. R. App. P. 10.1(a)(2); *Reynolds Energy Transp., LLC v. Plains Mktg., L.P.*, 706 S.W.3d 845, 875 (Tex. App.—San Antonio 2024, no pet.); *Greene v. Young*, 174 S.W.3d 291, 298 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *In re L.A.M. & Assocs.*, 975 S.W.2d 80, 83 (Tex. App.—San Antonio 1998, orig. proceeding)); *see also Terrazas*, 962 S.W.2d at 44 ("For example, disciplinary rule violations are not grounds for reversal of a conviction; any remedy for such violations must be sought through processes provided by the State Bar."); *House*, 947 S.W.2d at 253 ("[I]t is unnecessary for trial and appellate courts to decide whether the State's conduct violated a disciplinary rule. That is the domain of the State Bar."). Further, to the extent Gonzalez Fernandez seeks sanctions under § 37.10 of the Texas Penal Code,

that statute creates a criminal offense; it does not provide for the imposition of monetary sanctions against a litigant who allegedly violates the statute during the course of a criminal proceeding. *Cf. In re State*, 605 S.W.3d at 725 (holding Texas Code of Criminal Procedure Article 39.14 does not provide for the imposition of monetary sanctions and the statute therefore did not authorize the imposition of monetary sanctions). Finally, to the extent Gonzalez Fernandez is requesting sanctions for alleged violations of Rule 52.11 of the Texas Rules of Appellate Procedure, we have previously held that Rule 52.11 only applies to such original proceedings and does not apply to cases in which a party is appealing from a trial court's judgment. *Blair v. Blair*, 642 S.W.3d 150, 162 (Tex. App.—El Paso 2021, no pet.); *see Solomon*, 695 S.W.3d at 674–75.

Accordingly, we deny Gonzalez Fernandez's requests for sanctions.

## V. CONCLUSION

We affirm the county court's order dismissing Gonzalez Fernandez's case. We deny Gonzalez Fernandez's motion for sanctions against the State.

PER CURIAM

February 18, 2026

Before Palafox, and Soto, JJ., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), (sitting by assignment)

Soto, J., filed concurring opinion regarding sanctions,
in which Barajas, C.J., joined